UNITEN STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

    JOVAN FLUDD #06 A 2055,
          Petitioner

    — VS —

BRIAN FISCHER, COMMISSIONER
ANTHONY ANNUCCI, DEPUTY COMMISSIONER
ROBERT KIRKPATRICK, SUPERINTENDENT
MARTIN KEARNEY, CAPTAIN
JOSEPH NOETH, CAPTAIN
CURTIS DROWN, COMMISSIONER HEARING OFFICER
THOMAS STICHT, DEPUTY SUPERINTENDENT
KAREN CROWLEY, DEPUTY SUPERINTENDENT
STEPHEN CASACELI, CAPTAIN
NORMAN BEZIO, DIRECTOR OF SPECIAL HOUSING UNIT (SHU)
JAMES HERRING, CORRECTIONAL OFFICER

          DEFENDANTS

COMPLAINT
CIVIL ACTION
#10 C V 6603P

[FILED stamp: UNITED STATES DISTRICT COURT   FILED   OCT 25 2010   MICHAEL J. ROEMER, CLERK   WESTERN DISTRICT OF NY]

---

## STATEMENT OF JURISDICTION

1. This is a civil action seeking relief and damages to defend and protect the rights guaranteed by the constitution of the united states. This action is brought pursuant to 42 U.S.C. Section 1983. The court has jurisdiction over the action pursuant to 28 U.S.C. Section 1331, 1343(3) and (4), and 2201.

## PARTIES TO THIS ACTION

Petitioner's Information:

2. JOVAN FLUDD #06 A 2055 is currently confined at Wende Correctional Facility (CF) Wende Road, P.O. Box 1187, Alden, NY 14004.

DEFENDANT'S INFORMATION:

3. Defendant BRIAN FISCHER is the Commissioner of the New York STATE Department of Correctional Services (DOCS) and was the Commissioner during the entire time of Petitioner's Confinement in SHU at Wende CF. He is legally Responsible for the Overall operation of the Department and each institution under its jurisdiction, including Wende CF.

4. Defendant ANTHONY ANNUCCI is the Deputy Commissioner and counsel of DOCS and was the Deputy Commissioner and Counsel of DOCS during the entire time of Petitioner's Confinement in the SHU at Wende CF. He is legally Responsible for the Overall operation of the Department and each institution under its jurisdiction, including Wende CF.

5. Defendant ROBERT KIRKPATRICK is the Superintendent of Wende CF and was the Superintendent of Wende CF during the entire time of Petitioner's Confinement in the SHU at Wende SHU. He is legally Responsible for the operation of Wende CF and for the welfare of all the inmates of that Prison.

6. Defendant MARTIN KEARNEY is the Captain of Wende CF and was the Captain of Wende CF during the entire time of Petitioner's Confinement in the SHU at Wende SHU. He is legally Responsible for the operation of Wende CF and for the welfare of all the inmates of that Prison.

7. Defendant Joseph ⬛ NOETH is the Captain of ELMIRA CF and was the Lieutenant of Wende CF from the beginning of Petitioner's Confinement in the SHU at Wende CF. He was Responsible for the operation of Wende CF and for the welfare of all inmates in that Prison.

8. Defendant CURTIS DROWN is the Commissioner Hearing Officer assigned to Clinton CF who Conducted Petitioner's APRIL 1, 2008, Administrative Segregation hearing at Wende CF. He is legally Responsible for being an impartial Hearing Officer.

9. Defendant THOMAS STICHT is the Deputy Superintendent for Security of Wende CF and was the Deputy Superintendent of Wende during Petitioner's Confinement in the SHU at Wende CF. He is Responsible for the operation of Wende CF and the welfare of all the inmates of that Prison.

10. Defendant KAREN CROWLEY is the Deputy Superintendent for Programs of Wende CF and was the Deputy Superintendent of Wende during Petitioner's confinement in the SHU at Wende CF. She is responsible for the operation of Wende CF and for the welfare of all the inmates of that prison.

11. Defendant STEPHEN CASACELI is the captain of Wende CF and was the captain of Wende CF during Petitioner's confinement in the SHU at Wende CF. He is legally responsible for the operation of Wende CF and for the welfare of all the inmates of that prison.

12. Defendant NORMAN BEZIO is the Director of SHU and was the Director of SHU during Petitioner's confinement in the SHU at Wende. He is legally responsible for reviewing administrative appeals and the operation of the SHU.

13. Defendant JAMES HERRING is a Correctional Officer of Does, who at all times mentioned in this complaint, held the rank of a prison guard and was assigned as Petitioner's legal assistant.

## PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

14. Petitioner has begun a state proceeding solely dealing with the mail handling aspect as described in the second claim.

   a) Parties of this lawsuit: JOVAN FLUDD V. ROBERT KIRKPATRICK

   b) Court: ERIE COUNTY COURT

   c) Index Number: I-2010-4709

   d) Name of Presiding Judge: John L. Michalski

   e) Approximate date the action was filed: The week of April 26, 2010.

   f) Disposition of the case: ▓▓ Pending Appeal

15. Petitioner has not ▓ commenced any other lawsuits in Federal Court, which relates to his imprisonment.

## FIRST CLAIM

16. On or about April 17, 2006, Petitioner was Received into the Department of Correctional Services (hereinafter Docs) custody after being sentence to an aggregated term of 6-12 years for falsifying documents, which consist of ucc forms listing parties that were involved in a prior criminal proceeding. Such parties included judges, prosecutors and various other individuals.

17. Petitioner arrived into Docs custody with a set of Restrictive terms ordered by Judge Arlene Goldberg (the trial court) dated March 13, 2006, that consist of the handling of Petitioner's mail in which all Petitioner's mail (personal and privileged) Remained unsealed to be forwarded to a designee for a thorough inspection before the mail is approved and forwarded to its destination. Among other restrictions, Petitioner was not permitted to petition any court without such documents being examined by the trial court.

18. Defendants Fischer and Annucci knowingly and unlawfully enforced Judge Goldberg's order.

19. On July 24, 2006, and August 8, 2006, Petitioner received a misbehavior Report for violating Docs correspondence directives in an attempt to circumvent the correspondence related terms of Judge Goldberg's order. Petitioner received two separate penalties of lost of privileges. Neither two misbehavior reports were related to an uniform commercial code (hereinafter ucc) form. See Exhibit A

20. On or about July 24, 2006, to August 26, 2006, Petitioner served Defendant Kirkpatrick and about 10 other Wende correctional facility employees (including correction counselor Diane catalfu) with a nonjudicial demand for monetary compensation as a Result of injuries stemming from intentional actions performed concerning

    1. unverified charges
    2. mishandling of funds and
    3. verbal assault

21. The non-judicial demand for monetary compensation expressed

    1. The nature of the demand

    2. The Respondents' agreement to personal liability of the requested sum along with

    3. The Respondents' agreement to be listed as a debtor on an UCC-1 form in the event Respondents fail or refuse to respond.

22. On or about August 29, 2006, former Deputy Superintendent William Smith interfered with the matter between Petitioner and Catalfu by attempting to intimidate Petitioner with the intent of causing Petitioner to abandon his claim against Catalfu. See Exhibit __B__

23. On or about September 5, 2006, Petitioner served Smith with a demand for his interference with the matter between Petitioner and Catalfu.

24. On or about September 7, 2006, all parties defaulted and Petitioner served each party with a notarized notice of default.

25. On September 7, 2006, Petitioner was placed in Wende's Special Housing Unit (hereinafter SHU) under administration segregation status (indefinite solitary confinement) to hinder Petitioner from pursuing his claims against facility employees, but Petitioner placement was done under the disguise of keeping Petitioner in compliance with Goldberg's order.

26. On or about September 11, 2006, Petitioner was served with an administration segregation recommendation that was authored and authorized by Defendant Kearney. See Exhibit __C__

27. During the first two weeks in the SHU Petitioner was denied all legal and personal documents including addresses and phone numbers of family and friends.

28. On or about September 18, 2006, Petitioner made his first appearance at a Superintendent's hearing concerning the recommendation, but the hearing was adjourned due to Petitioner being denied __all__ his legal and personal documents.

29. A few days after the hearing during the week of September 18, 2006, Petitioner was provided with most of his legal and Personal documents with the clear exception of all the claims petitioner made against Facility employees along with Related UCC-1 Forms and notices of Default. All Petitioner's addresses and phone numbers of Family and Friends were also not Returned to petitioner.

30. The superintendent's hearing Resumed on September 25, 2006.

31. During the September 25, 2006, hearing, Petitioner made a Request to Defendant Kearney to be Returned all his claims and Related UCC-1 Forms and notices of Default against Facility employees along with the confiscated addresses and phone numbers of Family and Friends. Kearney denied petitioner's Request with the stated Reason being due to an "on going" investigation.

32. Defendant Kearney also mentioned the monetary demands that petitioner made to wende Correctional Facility employees.

33. On or about September 25, 2006, Defendant James Kennedy did not Find petitioner to be a threat to the safety and security of the wende Correctional Facility nor to the safety and security of employees or other inmates; therefore, the Administrative segregation Recommendation was dismissed. See Exhibit C

34. On or about September 28, 2006, Defendant Kirkpatrick submitted an affidavit to Judge Goldberg for the purpose of notifying Goldberg of Docs inability to maintain petitioner in Administrative segregation as it would be against Docs policies along with Requesting for Goldberg to issue an additional order to keep petitioner solitarily and indefinitely confined in wende's SHU. See Exhibit D

35. Without ever leaving the SHU, Defendant Kearney served petitioner with a "Restrictive confinement" order issued by Judge Goldberg on ▮▮ or about September 29, 2006. See Exhibit E

36. Goldberg's order did not provide any statutory Authority for issuance nor did it contain any case law.

37. In addition to Judge Goldberg's initial order, DOCS was Further ordered:

1. to "take such steps that it deems necessary" including placement of petitioner in restrictive housing (indefinite solitary confinement) in order to limit his ability to have contact with other inmates through whom he may attempt to send out additional correspondences..."

2. to deny petitioner postal envelopes and stamp etc...

38. Defendants Fischer, ANNUCCI, KIRKPATRICK and KEARNEY enforced Judge Goldberg's Restrictive confinement order by maintaining petitioner in the SHU along with denying petitioner postal envelopes and stamps without providing petitioner with an advance notice nor a due process hearing.

39. The sole and primary goal of the restrictive confinement order was to moniter petitioner's correspondence and Defendants Fischer, ANNUCCI, KIRKPATRICK and KEARNEY conveniently enforced Judge Goldberg's order without providing petitioner due process for the sole purpose of hindering petitioner from pursuing claims against Defendants KIRKPATRICK and other wende correctional facility employees even after it being expressed to Judge Goldberg that DOCS inability to maintain petitioner in SHU.

40. The Restrictive confinement order did not provide any information concerning how the presence of petitioner in general population would have been a threat to the safety and security of the facility, employees or other inmates as required in DOCS Directive.

41. On December 11, 2006, on behalf of petitioner, Appellant Attorney Jennifer Eisenberg brough an order to show cause in the trial court seeking vacatur and modification of the court's Restrictive orders concerning Attorney-client privilege mail.

42. The trial court denied vacatur, directing certain minor modifications to facilitate Petitioner's correspondence with counsel and Petitioner remained in solitary confinement.

43. Petitioner was only afforded attorney-client privilege with attorneys Jennifer Eisenberg and Michael Rodi.

44. In March 2007, Petitioner challenged Goldberg's restrictive confinement orders by way of an Article 78 petition to the Appellate Division, First Department.

45. On August 10, 2007, Petitioner received a misbehavior report for a correspondence violation, which involved Petitioner's attempt to transfer a $36.00 credit owed to him from one bookseller to another. Petitioner received a penalty of four months lost of privileges. This misbehavior report was also not related to any UCC-1 forms. see Exhibit   A

46. Petitioner remained in solitary confinement in the SHU for the entire year that Petitioner's Article 78 Proceeding was pending in the Appellate Division.

47. On March 18, 2008, The Appellate Division ordered vacatur of all of the trial court's restrictive orders in their totality and the immediate release of Petitioner from indefinite solitary confinement in the SHU.

48. Petitioner was held in solitary confinement in the SHU for 18 months without being provided with an advance notice and a due process hearing.

49. The Appellate Division's decision was served to Defendants Fischer, Annucci, and Kirkpatrick by Eisenberg on or about March 19, 2008.

50. The only Respondent to seek review by the Court of Appeals was the New York County District Attorney Robert Morgenthau.

51. Despite the explicit directive from the Appellate Division, Petitioner was never released from solitary confinement. Instead, on March 20, 2008, Defendant ANNUCCI directed Defendant KIRKPATRICK to draft a new Administrative Segregation Recommendation in which the Recommendation was authored by Defendant Noeth and authorized, again, by Defendant KEARNEY. See Exhibit F

52. This new Recommendation reflects the intentions of Defendants ANNUCCI, KIRKPATRICK, KEARNEY and NOETH to maintain Petitioner in solitary confinement by any means necessary, especially after two previously failed attempts.

53. The basis for this new Recommendation is the 18 Month old confiscation of incomplete UCC-1 forms from Petitioner's Personal Property listing several Wende Correctional Facility employees as debtors, which was the actual basis of the initial September 11, 2006, Administrative Segregation Recommendation as described in Paragraphs 16 - 51.

54. Defendants FISCHER, ANNUCCI, KIRKPATRICK and KEARNEY were well aware of the UCC-1 forms since September 8, 2006, three days before the initial Administrative Segregation Recommendation was written on September 11, 2006, but failed to use the UCC-1 forms as a basis for the initial Recommendation until March 20, 2008, which was used as a desperate measure for maintaining Petitioner in solitary confinement indefinitely in the SHU. See Exhibits C and F.

55. In the March 20, 2008, Recommendation, Defendant Noeth strategically and conveniently stated the September 8, 2006, discovery of the UCC forms as the basis for the Recommendation without mentioning the attached claims and related notices of default with the intention of causing Petitioner to be perceived as a baseless filer of UCC-1 forms.

56. Although the Recommendation stated "see attached," no documents were attached to the ▪ Administrative Segregation Recommendation provided to petitioner.

57. The Recommendation went on to state that petitioner presence in the general population posed a ▪ threat to the safety and security of the prison, because he would be able to file false UCC-1 forms that would, in turn, enable him to obtain personal information of Wende employees.

58. The Recommendation concluded that petitioner's behavior is, and has been, inconsistent with DOCS Rules against inmates harassing staff and attempting to obtain personal staff information.

59. On or about March 21, 2008, petitioner handed to Defendant James Herring (petitioner's assistants) a three page Request for various documents including documents from the September 11, 2006, Administrative ▬▬▬ Segregation Recommendation along with questions for interviewing potential witnesses. see Exhibit G

60. A Superintendent's hearing was conducted on April 1, 2008, by Defendant Drown.

61. Petitioner prepared several pages of handwritten notes and objections to assist him in presenting his defense in which he brought with him to the hearing.

62. Once the hearing began, petitioner was allowed to briefly speak until Defendant Drown interrupted and immediately confiscated petitioner's notes and objections.

63. Petitioner objected to the confiscation.

64. Defendant Drown Resumed the hearing after adjourning for several ▬▬ minutes to read petitioner's notes and informed petitioner that his notes had now been made a part of the record.

65. Petitioner then objected that he had never received copies of the evidence used against him, despite the fact that the written recommendation had stated "see attached".

66. Petitioner made a request to receive the evidence used against him, but Defendant Drown denied Petitioner with the stated reason being that be "believed" the evidence (UCC-1 forms) used would be contraband in the hands of Petitioner.

67. Defendant Drown could not provide Petitioner with a DOCS policy that supported his assertion of UCC-1 forms being contraband in the possession of Petitioner or any other inmate.

68. Instead of providing Petitioner with the evidence used against him along with enough time to prepare a defense, Defendant Drown insisted on displaying each of the six pages of evidence through the plexiglass panel separating Petitioner and Defendant Drown.

69. Petitioner consistantly complained that he was having trouble reading the documents because the glass was extremely dirty.

70. When Petitioner continued complaining about the extremely dirty Plexiglass, Defendant Drown repeatedly called Petitioner a "liar" and refused to let Petitioner examine the documents by any other means because he "believed" they were contraband.

71. Petitioner was not even able to identify the displayed documents due to the very poor visibility through the dirty plexiglass panel.

72. Petitioner attempted to register objections at numerous points during the course of the hearing, but was invariably interrupted by Defendant Drown.

73. Each time, Drown would tell Petitioner to be quiet unless his objection was not "repetitive," but Petitioner complained that since his notes had been confiscated, he could not remember every single thing that he had written down and so he might be liable to repeat certain objections.

(11)

74. Nevertheless, Defendant Drown did not allow Petitioner to make a full Record For almost any of his contentions, on the principle that such objections were either irrelevant or Repetitive.

75. Defendant Herring personally expressed to Petitioner that he made no effort to obtain documents or interview Requested persons. Defendant Herring stated that all the answers on the Request Form were answered by the Secretary of Defendant Kearney.

76. Petitioner objected to the ineffectiveness of Defendant Herring, stating among other things, that the assistant had made no effort to contact witnesses or obtain evidence.

77. When Defendant Drown began to look at the list of tasks and document Requests Petitioner had prepared For Defendant Herring, Petitioner objected, stating that he had never Received a copy of that list after ████ Defendant Herring had allegedly Responded to it.

78. The list, which was ultimately provided to Petitioner, denied virtually all his Requests with almost no explanation along with stating that all documents Petitioner Requested pertaining to the September 11, 2006, Administration segregation Recommendation were expunged and Records were destroyed.

79. Petitioner was directed to Foil some of the Requested documents that he had written on the list For ████ Defendant Herring to obtain.

80. At different points of the hearing, Defendant Drown began yelling and screaming at Petitioner in which Petitioner made numerous Requests For an adjournment For the purpose of Drown being able to calm down so that Petitioner can be provided a Fair hearing.

81. Defendant Drown admitted to being frustrated, but denied Petitioner's Request For an adjournment.

(12)

82. ■ Petitioner made a request to call Defendant Herring to testify about any efforts he had made on petitioner's behalf. Petitioner wanted Defendant Herring to testify concerning his efforts to interview potential witnesses such as Department of State Representatives and Deputy Commissioner and Counsel of DOCS regarding UCC-1 Forms.

83. Defendant Drown speculated that since the testimony of those witnesses would have been "immaterial", the testimony of the assistant was unnecessary.

84. Petitioner objected to the denial of witnesses.

85. Petitioner objected to the Recommendation for being an inadequate notice, which deprived petitioner the ability to properly fashion a defense.

86. The Recommendation did not state

1. which employees petitioner harassed
2. when the harassment occurred
3. where the harassment occurred ■
4. How did petitioner harass the "unidentified" people
5. How petitioner can obtain personal information of employees if an UCC-1 form is filed.
6. Which DOCS policy was violated due to petitioner's possession of UCC-1 Forms.

87. Defendant Drown stated that he will consider petitioner's objection to inadequate notice.

88. Petitioner objected to the Recommendation due to it containing a statement that said petitioner had been inconsistent with DOCS Rules and standards of harassing staff and trying to obtain their personal information when petitioner did not have a history of such allegations.

89. Petitioner also objected to the Recommendation because it was a Recommendation to keep him solitarily confined in the SHU indefinitely for the sole purpose of monitoring his mail as stated at the end of the Recommendation, which is not a permissible reason for administration segregation in accordance with DOCS Directives.

90. Petitioner objected to the 18 month delay for the March 20, 2008, Recommendation due to Defendant Kearney being aware of the UCC-1 forms before the initial Recommendation of September 11, 2006, was written.

91. Petitioner objected to the Recommendation due to it being the third attempt to place and maintain petitioner in solitary confinement indefinitely concerning the same issues of UCC-1 forms and mail monitoring in which petitioner successfully challenged two previous attempts.

92. Petitioner requested Defendant Noeth as a witness.

93. Defendant Drown required petitioner to promptly state his objection, but then refused to allow petitioner to make prompt objections during the testimony of Defendant Noeth.

94. Petitioner was barred from making immediate objections during the presence of Defendant Noeth and was forced to state all objections at the end of Defendant Noeth's entire testimony in which petitioner was not able to remember all his objection.

95. Defendant Noeth testified that he was not familiar with UCC-1 forms until the date of the March 20, 2008, Recommendation.

96. Petitioner asked Defendant Noeth to support his statement made in the Recommendation concerning petitioner's ability to obtain the personal information of employees by filing UCC-1 forms and Defendant Noeth testified that he is not an expert with UCC-1 forms, but he "believes" that by filing the UCC-1 forms, personal information will be returned to petitioner.

(14)

97. In addition to testifying that he was not familiar with UCC-1 forms, Defendant Noeth also testified that he did not bother to contact the Department of State to seek clarity as to whether a person is able to obtain the personal information of the person(s) that he/she is filing against.

98. Although Defendant Noeth stated in the Recommendation that Petitioner's presence in general population would allow him to file "false" UCC-1 form, he has testified that he is <u>not</u> able to determine whether or not a complete UCC-1 form is false.

99. Defendant Drown did not allow Defendant Noeth to testify to many of Petitioner's questions nor did he provide an explanation.

100. After Defendant Noeth exited the hearing area, Petitioner was then permitted to make his objections.

101. Petitioner first objected to Defendant Drown not permitting Petitioner to make prompt objections as Defendant Drown had instructed at the very beginning of the hearing.

102. Petitioner objects to the Recommendation due to Defendant Noeth stating in the Recommendation that Petitioner can obtain the personal information of employees by filing UCC-1 forms, but then testified at the hearing that he is <u>not</u> sure if personal information can be obtained with such a filing.

103. Petitioner requested Defendants Kirkpatrick, Kearney, the Department of State and all the employees referenced in the Recommendation that he allegedly harassed, but Defendant Drown denied Petitioner's request.

104. Defendant Drown called Commissioner Hearing Officer Kennedy (the hearing officer from the September 18, 2006, hearing) as a witness.

105. Defendant Drown did not allow Kennedy to answer any of Petitioner's questions and Petitioner objected.

106. The hearing concluded on the same day (April 1, 2008) with Petitioner remaining in administrative segregation indefinitely.

107. At various points throughout the hearing, Petitioner made numerous requests for an adjournment for the purpose of Defendant Drown to regain his composure, which would have afforded Petitioner his entitled fairness.

108. Defendant Drown repeatedly interrupted Petitioner and called him a "liar" ▓▓ throughout the hearing.

109. Petitioner was not able to properly defend himself after Defendant Drown confiscated his notes.

110. Petitioner's Attorney Jennifer Eisenberg made a FOIL request to the Wende Inmate Records Coordinator on or about April 9, 2008, to receive all related documents for preparing an appeal. ▓▓▓▓▓▓▓

111. On or about April 25, 2008, Attorney Eisenberg visited Petitioner and retrieved some of the requested documents via FOIL from the Wende Inmate Records Department, which included documents that Defendant Drown denied Petitioner at the April 1, 2008, hearing, given the reason of such documents being "expunged."

112. On or about April 14, 2008, District Attorney Morgenthau served Petitioner a notice of intent to appeal the Appellate Division's March 18, 2008, decision and filed his preliminary statement on or about April 24, 2008.

113. On or about May 16, 2008, District Attorney Morgenthau withdrew his appeal.

114. On or about April 30, 2008, Attorney Eisenberg submitted an administrative appeal to Defendant Bezio on behalf of Petitioner expressing all violations and retaliatory motives.

115. On or about June 18, 2008, Defendant Bezio affirmed Petitioner's April 1, 2008, hearing.

116. On or about October 14, 2008, Attorney Eisenberg submitted an Article 78 petition on behalf of petitioner to the Albany County Supreme Court.

117. The matter was transferred to the Albany County Appellate Division shortly after due to a substantial evidence issue.

118. On or about May 14, 2009, the Appellate Division dismissed petitioner's Article 78 petition.

119. Petitioner requested permission to appeal to the New York State Court of Appeals on or about June 15, 2009, in which his request was eventually denied.

120. Petitioner grieved this claim and a complaint number (WDE-28647-08) was assigned.

121. Petitioner grievance was denied and petitioner appealed the decision to Defendant Kirkpatrick in which he also denied petitioner's complaint.

122. Petitioner appealed to the Central Office Review Committee (CORC) and the committee also denied petitioner's complaint. see Exhibit H

### First Cause of Action

123. Defendants Fischer, Annucci and Kirkpatrick's enforcement of Judge Arlene Goldberg's March 13, 2006, order deprived petitioner the right to petition the court, in violation of the First Amendment of the United States Constitution.

### Second Cause of Action

124. Defendants Fischer, Annucci, and Kirkpatrick's enforcement of Judge Arlene Goldberg's March 13, 2006, order deprived petitioner of postal envelopes, which denied petitioner his right to "Attorney-Client" privilege in violation of the First and Sixth amendments of the United States Constitution.

(17)

### Third Cause of Action

125. Defendants Fischer, Annucci, and Kirkpatrick enforcement of Judge Arlene Goldberg's September 29, 2006, Order denied Petitioner of liberty for 18 months without due process in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

### Fourth Cause of Action

126. Defendants Fischer, Annucci, and Kirkpatrick's enforcement of Judge Arlene Goldberg's September 29, 2006, Order deprived Petitioner the Right to petition the Court in violation of the First Amendment of the United States Constitution

### Fifth Cause of Action

127. Defendants Fischer, Annucci, Kirkpatrick and Kearney's enforcement of Judge Arlene Goldberg's September 29, 2006, Order, deprived Petitioner of Postal envelopes, which denied Petitioner the Right to Attorney-Client Privilege in violation of the First and Sixth Amendments of the United States Constitution.

### Sixth Cause of Action

128. Defendants Kirkpatrick, North, and Kearney's writing and approval of the March 20, 2008, Administrative Segregation Recommendation 18 months after being aware of the UCC-1 forms is arbitrary and capricious in violation to Petitioner's Rights to due process under the Fourteenth Amendment of the United States Constitution.

### Seventh Cause of Action

129. Defendant Brown's confiscation of Petitioner's written notes and objections denied Petitioner the Right to Fashion a defense in violation of due process under the Fourteenth Amendment of the United States Constitution.

## Eighth Cause of Action

130. Defendant Drown's Refusal to Provide Petitioner with the evidence used against him in Violation of Petitioner's Rights to due Process under the Fourteenth Amendment of the United States Constitution.

## Ninth Cause of Action

131. Defendant Drown's Refusal to allow Petitioner to Make a Full Record For Most of his objections Violated Petitioner's Rights in Violation of due Process under the Fourteenth Amendment of the United States Constitution.

## Tenth Cause of Action

132. Defendants Fischer, Annucci, Kirkpatrick, Drown, and Herring denied Petitioner Meaningful and effective assistance in Violation of due Process under the Fourteenth Amendment of the United States Constitution.

## Eleventh Cause of Action

133. Defendant Drown's Repeated identification of Petitioner as a "liar" during the hearing denied Petitioner a Fair and impartial hearing officer in Violation of due Process under the Fourteenth Amendment of the United States Constitution.

## Twelfth Cause of Action

134. Defendant Drown's continuous yelling and screaming at Petitioner denied Petitioner a Fair and impartial hearing officer in Violation of due Process under the Fourteenth Amendment of the United States Constitution.

## Thirteenth Cause of Action

135. Defendant Drown denied Petitioner witnesses in Violation of due Process under the Fourteenth Amendment of the United States Constitution.

### Fourteenth Cause of Action

136. Defendants Kearney and Noeth did not provide petitioner with adequate notice of the Administrative segregation Recommendation in violation of due process under the Fourteenth Amendment of the United States Constitution.

### Fifteenth Cause of Action

137. Defendants Kirkpatrick, Kearney, and Drown denied petitioner all documents Stemming from the September 11, 2006, Administration Segregation Recommendation with the excuse of being expunged and destroyed when such documents were provided to Attorney Jennifer Eisenberg via a Foil Request after the hearing was over, which is a Violation of petitioner's Rights to be provided with documents that could have been used to fashion a defense in violation of due process under the Fourteenth Amendment of the United States Constitution.

### Sixteenth Cause of Action

138. Defendant Drown deprived petitioner of liberty without substantial evidence in violation of due process under the Fourteenth amendment of the United States Constitution.

### Seventeenth Cause of Action

139. Defendant Bezio affirmed Defendant Drown's June 17, 2008, hearing, without substantial evidence in violation of petitioner's Rights to due process under the Fourteenth amendment of the United States Constitution.

### Eighteenth Cause of Action

140. Defendants Kirkpatrick, Kearney, and Noeth's 18 month delay for writing the Administrative Segregation Recommendation constituted a violation of petitioner's due process Rights under the Fourteenth amendment of the United States Constitution.

## Nineteenth Cause of Action

141. Defendants third attempt to prosecute petitioner concerning the very same issue for monitoring petitioner's correspondence constitutes a violation of petitioner's rights to be protected from double jeopardy in violation of the fifth amendment of the united states constitution.

## Twentieth Cause of Action

142. Defendants repeated attempts to deprive petitioner of liberty at all cost constitutes an abuse of administrative authority in violation of due process under the fourteenth amendment of the united states constitution.

143. The petitioner has no plain, adequate or complete remedy at law to redress the wrongs described herein. Petitioner has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief, which petitioner seeks.

## Relief Sought

Wherefore, petitioner respectfully request, for this claim, that this court enter judgment granting petitioner:

1. A declaration that acts and omissions described herein violated petitioner rights under the constitution and laws of the united states.

2. A preliminary and permanent injunction ordering defendants to:

    a) Release petitioner from his administrative segregation placement in the SHU; and

    b) Cease all further retaliatory attempts to replace petitioner in the SHU under administrative segregation for the very same issues concerning UCC-1 forms and monitoring of correspondence; and

3. compensatory damages against each Defendant, Jointly and severally, in the amount of one thousand five hundred dollars ($1,500.00) per day for each day of his confinement in the SHU;

4. Punitive damages in the amount of three thousand dollars ($3,000.00) per day for each day of his confinement in the SHU;

5. Petitioner's cost in this suit.

6. Any additional relief this court deems just, proper, and equitable.

## Second Claim

144. As described in the First claim, Petitioner's confinement to the SHU at Wende on administrative segregation status was continued as a result of the March 20, 2008, Recommendation.

145. The hearing for the March 20, 2008, Recommendation was commenced and completed on April 1, 2008.

146. From the conclusion of the hearing on April 1, 2008, Petitioner has not received meaningful reviews for his confinement in the SHU.

147. Although the administrative segregation Review is scheduled every sixty days, Petitioner was held in the SHU from March 20, 2008, to December 2, 2008, _without_ having his confinement Reviewed.

148. Petitioner was also held in the SHU _without_ having his confinement Reviewed from August 3, 2009, to April 1, 2010.

149. Petitioner was given the initial Reason for his confinement in the SHU, to wit:

Initially inmate Fludd was court ordered administrative segregation for issues prior to incarceration. Now inmate Fludd was Resubmitted due to similar actions inside the facility. Inmate Fludd was attempting to illegally gain personal information about staff members to place improper liens against their assets.

(22)

150. At the time of his confinement to SHU, Defendants Kirkpatrick and Sticht offered no factual allegations or evidence to support the conclusory statement quoted in paragraph __149__ herein. Nor did Defendants ever inform petitioner of any factual allegations or evidence to support that conclusory statement.

151. On the reviews of December 2, 2008, February 1, 2009, and April 1, 2009, for Petitioner's confinement, Petitioner was accused of "attempting to file improper liens against staff members and predicted to be a "disruptive influence" if allowed to be released to general population in which Defendants Kirkpatrick, Sticht, and Casaceli relied upon these statements for continuing Petitioner's confinement. See Exhibit __I__

152. Defendants Kirkpatrick, Sticht, and Casaceli offered no factual allegations or evidence to support the accusatory and conclusory statement quoted in paragraph __151__ herein. Nor did Defendants Kirkpatrick and Sticht ever inform Plaintiff of any factual allegations or evidence to support those accusatory and conclusory statement.

153. Defendants Kirkpatrick and Sticht knowingly and intentionally relied on false statements for continuing petitioner's confinement in the SHU.

154. On the June 1, 2009, review for petitioner's confinement, Defendant Kirkpatrick and Sticht continued Petitioner's confinement on the basis of petitioner having in his possession copies of UCC-1 forms that were evidence used against him in his criminal conviction as well as in the administrative segregation hearing of April 1, 2008, along with business information from two states. Nor did Defendants state how petitioner's mere possession of such forms constitutes a threat to the safety and security of the facility.

155. Defendants Kirkpatrick and Sticht did not state how petitioner's possession of UCC-1 forms used against him as evidence posed a threat to the safety and security of the facility as required in Docs directive #4932

156. In the August 3, 2009, Review of Petitioner's Confinement, Defendants Kirkpatrick and Casaceli's provided reason for Petitioner's continued confinement was due to an "alleged" investigation pertaining to the confiscated forms mentioned in the June 1, 2009, Review. ▓▓▓▓▓ This Review did not state how Petitioner was a threat to the safety and security of the facility. See Exhibit I.

157. In the April 1, 2010, and June 1, 2010, Reviews of Petitioner's confinement, Defendants Kirkpatrick, Kearney, and Casaceli relied on the unsupported assertion of Petitioner "allegedly" influencing other inmates to harass employees by writing grievances against them, to continue Petitioner's confinement in the SHU. The Review went on to assert that Petitioner would cause irreparable damage to individuals as well as the facility as a whole if allowed to be housed in general population, but the Review does not state how Petitioner would cause the irreparable damage. See Exhibit I.

158. There was no evidence presented to Petitioner concerning his influence on other inmates for harassing employees along with no evidence for Petitioner likelihood to cause the unspecified irreparable damage to individuals as described in paragraph 157.

159. Wende does not have an official three-member committee for administrative segregation reviews as required in accordance with DOCS directive # 4933.

160. Wende's three-member committee is comprised of the one-man team of Defendant Kirkpatrick along with a collection of signatures that are available at the time.

161. Since April 1, 2008, Petitioner has only received eight reviews with a total of 12 signatures from about 8 different people who performed as the facility ▓▓▓ three-member committee.

162. Defendant Casaceli performed two roles as a member of the committee. On the December 23, 2008, April 22, 2010, and the June 1, 2010, Reviews, Defendant Casaceli signed his name as the committee chairman and on the August 3, 2009, Review, Defendant Casaceli signed his name as the security supervisor.

(24)

163. Petitioner is not provided with any appeal mechanism to challenge the Sixty-day Review-Decisions nor was petitioner informed that he could appeal the Sixty-day Reviews.

164. There is no procedure calling for central office review of administrative segregation confinements, except when a prisoner is initially confined in the SHU, or when he is transferred to a different facility.

165. There was, in fact, no central office review of the petitioner's administrative segregation status during the entire time that he was confined at wende CF. Defendants therefore had no means for the central office to insure that defendants provide meaningful review of petitioner's confinement in administrative segregation, or that a basis for such confinement continued to exist.

166. In sum, petitioner was denied any meaningful review of his administrative segregation status during the entire time that he was confined to the SHU in wende CF. Any review of petitioner's status allegedly done by the defendants was, in fact, a sham.

167. In the four years petitioner was held in wende SHU under administrative segregation, petitioner was repeatedly refused a transfer to another facility for the purpose of being programed back into general population.

## Twenty-First Cause of Action

168. Defendants Kirkpatrick, Sticht, and tasaceti denied petitioner meaningful reviews for his confinement in the SHU from March 20, 2008, to December 2, 2008, in violation of due process under the Fourteenth amendments of the united states constitution.

## Twenty-Second Cause of Action

169. Defendants Kirkpatrick, sticht, and tasaceti denied petitioner meaningful reviews for his confinement in the SHU from August 3, 2009, to April 1, 2010, in violation of due process under the Fifth and Fourteenth amendments of the united states constitution.

### Twenty - Third Cause of Action

170. Defendants Kirkpatrick and Casali continued Petitioner's Confinement in the SHU as a Result of unsupported assertions made on the December 2, 2008, Review in violation of due Process under the Fourteenth amendment of the Constitution.

### Twenty - Fourth Cause of Action

171. Defendants Kirkpatrick and Sticht continued Petitioner's Confinement in the SHU as a Result of unsupported assertions made on the February 1, 2009, Review in violation of due Process under the Fourteenth amendment of the Constitution.

### Twenty - Fifth Cause of Action

172. Defendants Kirkpatrick and Sticht Continued Petitioner's Confinement in the SHU as a Result of unsupported assertions made on the April 1, 2009, Review in violation of due Process under the Fourteenth amendment of the Constitution.

### Twenty - Sixth Cause of Action

173. Defendants Kirkpatrick, Sticht, and Casali knowingly and intentionally Relied on False Statements for continuing Petitioner's Confinement in the SHU in violation of due Process under the Fourteenth amendment of the Constitution.

### Twenty - Seventh Cause of Action

174. Defendants Kirkpatrick and Casali continued Petitioner's Confinement in The SHU as a Result of the June 1, 2009, Review concerning Petitioner's mere possession of UCC-1 Forms in which Petitioner was entitled to possess at the time, in violation of due Process under the Fourteenth amendment of the United States Constitution.

### Twenty - Eighth Cause of Action

(26)

175. Defendants Kirkpatrick and Casaceli reason for continuing Petitioner's confinement in the SHU on the August 3, 2009, Review was due to an "alleged" investigation pertaining to the confiscated forms mentioned in the June 1, 2009, Review in violation of due process under the Fourteenth Amendment of the United States Constitution.

## Twenty-Ninth Cause of Action

176. On the April 1, 2010, Review, Defendants Kirkpatrick, Kearney, and Casaceli continued Petitioner's confinement in the SHU by knowingly and intentionally relying on the unsupported assertion of Petitioner influencing other inmates to harass employees by writing grievances in violation of due process under the Fourteenth Amendment of the United States Constitution.

## Thirtieth Cause of Action

177. On the June 1, 2010, Review, Defendants Kirkpatrick, Kearney, and Casaceli continued Petitioner's confinement in the SHU by knowingly and intentionally relying on the unsupported assertion of Petitioner allegedly influencing other inmates to harass employees by writing grievances, in violation of due process under the Fourteenth Amendment of the United States Constitution.

## Thirty-First Cause of Action

178. Defendant Kirkpatrick's failure to have an official three-member committee for administrative segregation reviews in accordance with DOCS directive #4933, for insuring Petitioner receive meaningful reviews, constituted a violation of Petitioner's rights to due process under the Fourteenth Amendment of the United States Constitution.

## Thirty-Second Cause of Action

179. Defendant Kirkpatrick's continuous confinement of Petitioner in administrative segregation for over 4 years without evidence to support the sixty-day reviews is arbitrary and capricious, which constitutes a violation of Petitioner's rights to due process under the Fourteenth Amendment of the United States Constitution.

The Petitioner has no plain, adequate or complete remedy at law to redress the wrongs described herein. Petitioner has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief, which Petitioner seeks.

### Relief sought

Wherefore, Petitioner respectfully request, for this claim, that this court enter Judgment granting petitioner:

1. A declaration that acts and omissions described herein violated Petitioner's rights under the constitution and laws of the united states.

2. A preliminary and permanent injunction ordering defendants Fischer and Kirkpatrick to immediately release petitioner from administrative segregation status to be placed in general population.

3. Compensatory damages against each defendant, Jointly and severally, in the amount of one thousand five Hundred dollars ($1,500.00) per day for each day petitioner was confined in the SHU under administrative segregation status.

4. Punitive damages against each defendant, Jointly and severally, in the amount of Three thousand Dollars ($3,000.00) per day for each day petitioner was confined in the SHU under administrative segregation status.

5. A Jury trial on all issues triable by Jury.

6. Petitioner's cost in this suit.

7. Any additional relief this court deems Just, proper, and equitable.


### THIRD CLAIM

(28)

180. On or about April 10, 2008, Petitioner Received a Memorandum From Defendant Kirkpatrick Concering correspondence Restrictions, which was a means For continuing Judge Arlene Goldberg's September 29, 2006, order. The Reason given for the Restrictions was a Result of Petitioner's alleged "Correspondence violations involving harassing behavior." See Exhibit I

181. The Memorandum specified that
   1. Petitioner is not to be issued any postal envelopes and stamps.
   2. Deputy superintendent Crowley is designate to Review all Petitioner's outgoing Mail including all Petitioner's legal Mail (including Mail addressed to this court) with the exception of legal Mail addressed to Attorneys Jennifer Eisenberg and Michael Rodi.

182. On or about April 17, 2008, Petitioner Received another Memorandum From Kirkpatrick Concerning the correspondence Restrictions in which the only thing amended was the Reason For the Restrictions being due to a Notice of Appeal Filed to appeal the Appellate Division's March 18, 2008, decision. See Exhibit J

183. On or about June 3, 2008, Petitioner Received another Memorandum From Kirkpatrick Concerning the same correspondence Restrictions as described in Paragraph 181 as a Result of the withdrawn appeal of Morgenthau in which the Reason was amended back to the original Reason of "correspondence violations involving harassing behavior." See Exhibit J

184. Petitioner was not afforded a hearing to be heard on the imposed correspondence Restrictions.

185. Defendant Kirkpatrick circumvented Does policies #4421 and #4422 to Restrict Petitioner's Flow of Mail.

186. Petitioner is not afforded any legal or medical privacy when it came to correspondence.

187. All Petitioner's outgoing legal mail is subjected to scrutiny by Defendant Kirkpatrick designee ("Defendant Crowley") before being forwarded to any court, attorney, legal agency, including this very court.

188. Defendant Kirkpatrick usage of the reason "correspondence violation involving harassing behavior" is not supported by any of Petitioner's misbehavior reports concerning correspondence violations. see Exhibit A

189. On or about January 25, 2010, Petitioner filed a grievance concerning Defendant Kirkpatrick's memorandums of April 10, 2008, April 17, 2008, and June 3, 2008.

190. Petitioner's grievance was assigned the number WDE-32229-10.

191. Petitioner's grievance was denied and then Petitioner appealed to Defendant Kirkpatrick in which he also denied Petitioner's grievance.

192. Petitioner's appealed Defendant Kirkpatrick's decision to CORC. CORC also denied Petitioner's grievance.

### Thirty-Third Cause of Action

193. Defendants Fischer and Kirkpatrick's enforcement of Defendant Kirkpatrick's memorandum of June 3, 2008, denied Petitioner his right to Attorney-Client privilege in violation of the First Amendment under the United States Constitution.

### Thirty-Fourth Cause of Action

194. Defendants Fischer and Kirkpatrick's enforcement of Defendant Kirkpatrick's memorandum of June 3, 2008, denied Petitioner his right to the Free Flow of Mail, in violation of the First Amendment under the United States Constitution.

(30)

### Thirty - Fifth Cause of Action

195. Defendants Fischer and Kirkpatrick's Refusal to Follow Guidelines in Docs Directives #4421 and #4422 concerning the handling of Petitioner's Correspondence in violation of the First Amendment of the united states constitution.

### Thirty - Sixth Cause of Action

196. Defendants Fischer and Kirkpatrick enforced Defendant Kirkpatrick's Memorandum of June 3, 2008, without a hearing in violation of due process under the Fourteenth Amendment of the united states constitution.

197. Petitioner has no plain, adequate or complete remedy at law to redress the wrongs described herein. Petitioner has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief, which petitioner seeks.

### Relief Sought

Wherefore, Petitioner respectfully request, for this claim, that this court enter Judgment granting Petitioner:

1. A declaration that acts and omissions described herein violated petitioner's Rights under the constitution and laws of the united states.

2. A preliminary and permanent injunction ordering defendants Fischer and Kirkpatrick to cease enforcement of Defendant Kirkpatrick's June 3, 2008, Memorandum concerning the handling of petitioner's correspondence.

3. Compensatory damages against each defendant, jointly and severally, in the amount of seven hundred fifty dollars ($750.00) per day for each day Defendant Kirkpatrick's Memorandums were enforced.

4. Punitive damages against each defendant, jointly and severally in the amount of one thousand five hundred dollars ($1,500.00) per day for each day Defendant Kirkpatrick's Memorandums were enforced.

5. A jury trial on all issues triable by jury

6. Petitioner's cost in this suit

7. Any additional relief this court deems just, proper, and equitable.

## FOURTH CLAIM

### Law Library Access

198. On or about June or July of 2009, Defendant Crowley with the approval of Defendants Fischer and Kirkpatrick, implemented a procedure concerning SHU inmates being denied access to law books. Instead, SHU inmates were only allowed to receive photocopies of the requested material.

199. Although photocopies of the books were provided, SHU inmates were only permitted to receive no more than two <u>sections</u> or <u>chapters</u> of the requested book per day.

200. SHU inmates have always been limited to two request a day, but Defendants further limited SHU inmates' request to <u>only</u> a portion of a book per request.

201. Oftentimes, the copier machine was not working and there was no back up copier in which the SHU inmates were forced to be without any law library material until the machine is up in running again, because not all of the law library books were copied in advance. It was copied upon request. <u>see</u> Exhibit _K_

202. The material for SHU inmates have always been very limited. It usually takes several days to receive a simple request, because of it being loaned out to another SHU inmate.

(32)

203. It was virtually impossible for SHU inmates to do research, properly prepare legal documents and meet legal deadlines as a result of such system.

204. Defendant Crowley's reason for denying all SHU inmates law books was due to an isolated incident in which a SHU inmate "allegedly" damaged a law book.

205. Law books are also periodically destroyed in General Population, but Defendants had not implement the same "no book" policy for General Population inmates.

206. As of July 6, 2010, Defendant Crowley permitted SHU inmates to receive law library books again. See Exhibit L

207. Petitioner grieved this issue, which ~~was~~ was assigned the number WDE-33012-10.

208. Petitioner's grievance was accepted and Petitioner appealed to Defendant Kirkpatrick and Defendant Kirkpatrick also accepted Petitioner's grievance.

209. Petitioner appealed Defendant Kirkpatrick's decision to CORC for exhaustion purposes and CORC failed to timely respond in accordance with DOCS Directive # 4040 section 701.5 (d)(3)(ii).

### Thirty-Seventh Cause of Action

210. Defendants denied Petitioner law books in violation of his rights to access the court under the First Amendment of the United States Constitution.

211. Petitioner has no plain, adequate or complete remedy at law to redress the wrongs described herein. Petitioner has been and will continue to be irreparably injured by the conduct of the Defendants unless this court grants the declaratory and injunctive relief, which Petitioner seeks.

## Relief Sought

Wherefore, Petitioner Respectfully Request, for this claim, that this court enter Judgment granting petitioner:

1. A declaration that acts and omissions described herein violated petitioner's Rights under the constitution and laws of the united states.

2. compensatory damages against each defendant, Jointly and severally in the amount of three Hundred dollars ($300.00) Per day for each day Defendants denied Petitioner law books.

3. Punitive damages against each Defendant, Jointly and severally in the amount of six Hundred dollars ($600.00) Per day for each day Petitioner was denied law books.

4. A Jury trial on all issues triable by Jury.

5. Petitioner's cost in this suit.

6. Any additional Relief this court deems Just, Proper, and equitable.

## FIFTH CLAIM

### Atypical and Significant Hardship

212. During Petitioner's entire four year stay in wende SHU, he was subjected to a host of health demoting conditions.

213. upon arriving in wende shu on September 7, 2006, Petitioner was placed in a nonPlexiglassed cell and on or about July 23, 2007, Petitioner was transferred to another SHU cell that was covered with Plexiglass and had Remained there.

214. Petitioner did not commit any acts nor did petitioner exhibit any behaviors that warranted his placement in a Plexiglassed cell.

215. Defendants Fisher and Kirkpatrick did not afford Petitioner with a notice nor due process concerning the need for placing him in a plexiglassed cell.

216. About 66% of Petitioner's cell is covered with plexiglass and the plexiglass covering during the summer months makes it virtually impossible to breathe despite the small holes along the bottom of the plexiglass.

217. Wende's SHU has a very poor ventilation system.

218. The vents are inactive and clogged with dirt, which are inaccessible to inmates for cleaning.

219. Defendant Kirkpatrick only commands special cleaning of the SHU on the eve of or a few days leading to a scheduled visit by superior officers from DOCS Headquarters or from an outside agency to create a false appearance of cleanliness. This is the only time the SHU is cleansed.

220. SHU inmates are afforded an opportunity to clean their cells as scheduled on Sundays, Tuesdays, and Thursdays in which cleaning supplies are provided. However, such cleaning is limited to the internal area of the inmates' cell. The walkway outside the cell and the internal portion of cell-vent are very filthy and inaccessible to inmates.

221. Petitioner suffers from a severe case of asthma and the destructive combination of the cell covering of the plexiglass, the inactive and clogged vents and the filth of the SHU has an extremely negative effect on grievant's respiratory condition.

222. At times, mostly during the summer months, grievant is forced to overuse prescribed medication in order to breathe normally.

223. Defendant KIRKPATRICK has intentionally and continuously ignored the respiratory concerns of Petitioner.

224. During the summer months, each housing area, in Wende CF is equipped with two big electrical fans to increase air circulation with the exception of the SHU.

225. SHU inmates are discriminated against by not being provided with the same and it appears to be an additional penalty imposed on SHU inmates for being in the SHU.

226. The SHU cells do not have shelves or lockers for storing in-cell property such as clothing, hygiene products, legal material and books. SHU inmates are forced to place all above listed items on the floor of the cells.

227. The SHU cells do not have a desk or any form of writing station for inmates to write letters or to do any legal related writing.

228. The SHU cells are not equipped with facial mirrors for the purpose of SHU inmates being able to maintain a proper and appropriate appearance.

## Isolation

229. Petitioner is permitted one hour of "outdoor exercise" alone each day. However, unlike general population inmates who have the opportunity to utilize recreational equipment or to engage in organized team sport or exercise, Petitioner's ability to exercise was severly limited.

230. Petitioner would be escorted to an "exercise cell" that is filthy with a very strong rank of urine and feces in which the sky is the only view from the exercise cell.

231. The exercise cell does not have a bathroom and Petitioner cannot access the bathroom ▓▓▓ until the one hour Recreation is terminated.

232. Unlike general population inmates, Petitioner eats all meals alone in his cell. While in his cell, Petitioner cannot see or have physical contact with other inmates.

233. Petitioner is housed in the SHU with severely mentally ill inmates who throw urine and feces out of their cell.

234. Petitioner is Restricted on personal property, commissary purchases, package privileges, access to the Law Library, and access to the showers is Restricted as compared to general population inmates.

235. Petitioner is limited to only one nonlegal visit per week, while general population have unlimited visitation privileges.

236. General population inmates had no Restriction on telephone privileges, however, Petitioner has no access to the telephone ▓▓▓▓▓▓▓▓ "unless" in the event of an emergency.

Psychological HARM

237. As a Result of four years in the SHU, Petitioner became depressed, withdrawn, afraid, angry and jumpy. He is slowly becoming emotionless.

238. Petitioner has Recently sought help from mental health personnel due to the unbearable stress level as a Result of his indefinite confinement. See Exhibit M

239. Petitioner's Relationship with family and friends has deteriorated and Petitioner is devastated that he ▓▓▓▓ has been confined in the SHU indefinitely without having done something wrong.

240. Petitioner is sleep deprived and suffers from perpetual anxiety, confusion and lack of concentration as a result of his confinement in the SHu.

241. Petitioner has repeated thoughts of revenge against all defendants who have placed him in the SHu along with those who have continued his confinement in the SHu.

242. The confinement imposed upon petitioner creates an "atypical and significant hardship" in relation to ordinary incidents of prison life and the State of New York has granted its inmates a protected liberty interest in remaining free from that confinement by regulation and statue.

243. Petitioner completely exhausted his administrative remedies pertaining to the issues above, which ~~are~~ are comprised of three separate grievances.

### First Grievance - SHu Conditions

244. Petitioner grieved the issues concerning the conditions of the SHu, which was assigned the number WDE-82723-10.

245. Petitioner grievance was denied and petitioner appealed to Defendant Kirkpatrick.

246. Defendant Kirkpatrick denied petitioner's grievance and petitioner appealed to CORC.

247. CORC failed to timely respond in accordance with DOCS Directive #4040 Section 701.5 (d)(3)(ii).

### Second Grievance - Plexiglass

248. Petitioner grieved issues concerning being placed in a plexiglassed cell without due process, which was assigned the number WDE-33016-10.

249. Petitioner's grievance was denied and petitioner appealed to defendant Kirkpatrick.

250. Defendant Kirkpatrick denied petitioner's grievance and petitioner appealed to CORC.

251. CORC failed to timely respond in accordance with DOCS Directive #4040 section 701.5 (d)(3)(ii).

### Third Grievance — Cell Conditions

252. Petitioner grieved issues concerning no shelves, lockers, mirror and a writing station in SHU cells, which was assigned the number WDE-33047-10.

253. Petitioner's grievance was denied and petitioner appealed to defendant Kirkpatrick.

254. Defendant Kirkpatrick denied petitioner's grievance and petitioner appealed to CORC.

255. CORC failed to timely respond in accordance with DOCS Directive #4040 section 701.5 (d)(3)(ii).

### Fourth Grievance — Psychological Harm

256. Petitioner submitted a grievance on the issues concerning psychological harm on August 12, 2010, but the inmate grievance department never filed it.

### Thirty — Eighth Cause of Action

257. Defendant Kirkpatrick's placement of Petitioner in a Plexiglassed cell without due process in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

### Thirty-Ninth Cause of Action

258. Defendant Kirkpatrick Repeated Refusal to Rectify the issue of inadequate ventilation in Petitioner's cell, constituted a violation of Petitioner Rights to be Free From cruel and unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

### Fortieth Cause of Action

259. Defendant Kirkpatrick continuously subjected Petitioner to unsanitary living conditions in violation of Petitioner's Rights to be Free From cruel and unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

### Forty-First Cause of Action

260. Defendants Fischer, Annucci, Kirkpatrick, Noeth, and Drown's placement of Petitioner in the SHU for over Four Years For unwarranted Reasons has Resulted with Petitioner Suffering From Psychological injuries in violation of Petitioner's Rights to be Free From cruel and unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

### Relief Sought

Wherefore, Petitioner Respectfully Request, For this claim, that this Court enter Judgment granting Petitioner:

1. A declaration that acts and omissions described herein violated Petitioner's Rights under the Constitution and laws of the United States.

2. Punitive damages in the amount of Six Hundred Dollars ($600.00) Per day For each day of his confinement in the SHU.

3. A jury trial on all issues triable by jury.

4. Petitioner's cost in this suit.

5. Any additional Relief this court deems

## VERIFication

STATE OF NEW YORK) SS.:
COUNTY OF ERIE)

    JOVAN FLUDD, being duly Sworn, desposes and says that he is the Petitioner in the within Proceeding; that he has Read the Foregoing Petition and Knows the contents thereOF; that the same is True to his Knowledge, except as to the matters therein stated to be alleged on information and belief and that as to those matters, he believes them to be true.

*J. Fludd*

JOVAN FLUDD #06A2055

SWORN TO beFORE ME this
15 day OF October 2010.

*Michael D.*

NOTARY PUBLIC

**Michael D Hojsan**
**Notary Public-State of NEW YORK**
**Qualified in ERIE County**
**My Commission Expires** 11-9-2013

(42)

UNITED STATES DISTRICT COURT
OF WESTERN NEW YORK

# EXHIBITS

JOVAN FLUDD   V.   BRIAN FISCHER

EXHIBIT

<u>A</u>

07/24/08                          INMATE DISCIPLINARY HISTORY                          PAGE 1

INMATE ID#: 06A2055 FLUDD, JOVAN                                    LOCATION: 06-27-018

TIER 2   HEARING : 05/13/06 11:57 AM   LT    MYDOSH              SING SING SF
          INCIDENT: 05/11/06 01:50 AM   CO    D. BAKER            SING SING TR
100.13 FIGHTING
        10 D KEEPLOCK        PACKAGE        COMMISSARY   SERVICE DTES 05/11/06 05/21/06
        10 D PHONE                                        SERVICE DTES 05/11/06 05/21/06
        20 D KEEPLOCK        PACKAGE        COMMISSARY   PHONE       SUSPD TO 06/12/06
------------------------------------------------------------------------------------------
TIER 2   HEARING : 08/02/06 09:51 AM   LT    WILLIAMS            WENDE
          INCIDENT: 07/24/06 09:00 AM   OTHR  MILLER             WENDE
          APPEAL  : 08/08/06 AFFIRMED   DSS   MONAHAN            WENDE
180.11 FACIL CORRESPOND
        30 D RECREATION      PACKAGE        COMMISSARY   SERVICE DTES 08/02/06 09/01/06
        30 D PHONE                                        SERVICE DTES 08/02/06 09/01/06
------------------------------------------------------------------------------------------
TIER 2   HEARING : 08/08/06 09:26 AM   LT    WILLIAMS            WENDE
          INCIDENT: 08/04/06 08:00 AM   OTHR  MILLER             WENDE
180.11 FACIL CORRESPOND
        30 D KEEPLOCK        PERSONAL TV                  SERVICE DTES 08/04/06 09/03/06
        30 D PACKAGE         COMMISSARY     PHONE         SERVICE DTES 09/01/06 10/01/06
------------------------------------------------------------------------------------------
TIER 3   HEARING : 08/30/07 12:05 PM   CHO   KENNEDY            WENDE
          INCIDENT: 08/09/07 01:00 PM   SGT   D KACZMAREK        WENDE
          APPEAL  : 11/14/07 AFFIRMED   ADIR  PRACK             CENTRAL OFF
180.11 FACIL CORRESPOND
    4 M      PACKAGE         COMMISSARY     PHONE         SERVICE DTES 08/30/07 12/30/07
    4 M      EARPHONES                                    SERVICE DTES 08/30/07 12/30/07
------------------------------------------------------------------------------------------

***SUCCESSFUL PRINT COMPLETION***

FORM 2171B (4/01)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

_WENDE_ _____ **Correctional Facility**

# INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| FLUDD JOVAN | 06A2055 | D-3/12 |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| CORRESPONDENCE | 7-24-06 | 7:00 AM |

3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES
180.11  Failure To Comply with Correspondence Procedure

4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE

On returning envelope from Greece Williams (03A6102) (postage due) I opened as per Directive 4422.

The envelope was addressed to Ms Fludd. It contained a note, a stamp and 3 properly addressed and stamped letters from Jovan Fludd (06A2055) to third parties)

This practice circumvents correspondence procedures

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 7-24-06 | HELEN C MILLER | Helen C Miller | J. Mail Sgt |

5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)     SIGNATURES:

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)     FIRMAS     1. _____

2. _____     3. _____

**NOTE: Fold back Page 2 on dotted line before completing below.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DATE AND TIME SERVED UPON INMATE   7/25/06  8:42/pm     NAME AND TITLE OF SERVER
FECHA Y HORA DADO AL RECLUSO                            NOMBRE Y TÍTULO DEL QUE ENTREGA   G. Hodge, CO

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding.  Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la información derivada de ella en una demanda criminal.

## NOTICE ♦ AVISO

REVIEWING OFFICER (DETACH BELOW STATEMENT FOR VIOLATION HEARING ONLY)

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held.
Por este medio se le notifica que el informe anterior es un cargo formal el cual se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals.
Se le permitirá al recluso llamar testigos con tal de que al hacerlo no pondrá en peligro la seguridad de la institución o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement.
Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su respresentante antes de la audiencia para que haga una declaración acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

FORM 2171B (4/01)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

WENDE                                    **Correctional Facility**

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| FLUDD JOVAN | 06A 2055 | D-9 R |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| CORRESPONDENCE | 8-4-06 | 8:00 AM |

**3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES**
180.11 FAILURE TO COMPLY WITH CORRESPONDENCE PROCEDURE

**4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE**

An outgoing envelope from Todd Novick (06B0654) had postage due & it was opened as per Directive #4422.

The envelope was addressed to BRENDELL FLUDD. It contained 2 properly addressed and stamped letters from JOVAN FLUDD (06A2055) to third parties.

This practice circumvents Correspondence procedures.

| 5. REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 8-4-06 | HELEN C MILLER | Helen C Miller | R Mail Clerk |

| 5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any) | SIGNATURES: | |
|---|---|---|
| ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay) | FIRMAS | 1. _____ |

2. _____   3. _____

---

**NOTE: Fold back Page 2 on dotted line before completing below.**

DATE AND TIME SERVED UPON INMATE **8-7-06**   **8 AM**   NAME AND TITLE OF SERVER
FECHA Y HORA DADO AL RECLUSO                                NOMBRE Y TÍTULO DEL QUE ENTREGA   **R. Wiley**

You are hereby advised that any statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding.  Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la información derivada de ella en una demanda criminal.

**NOTICE ♦ AVISO**

REVIEWING OFFICER (DETACH BELOW STATEMENT FOR VIOLATION HEARING ONLY)

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held.
Por este medio se le notifica que el informe anterior es un cargo formal el cual se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals.
Se le permitirá al recluso llamar testigos con tal de que al hacerlo no pondrá en peligro la seguridad de la institución o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement.
Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribir al Diputado del Superintendente para Seguridad o su respresentante antes de la audiencia para que haga una declaración acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

Dist:   WHITE - Disciplinary Office   CANARY - Inmate (After review)

FORM 2171B (4/01)

STATE OF NEW YORK · DEPARTMENT OF CORRECTIONAL SERVICES

_____ Correctional Facility

# INMATE MISBEHAVIOR REPORT ◆ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ◆ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ◆ NÚM. | HOUSING LOCATION ◆ CELDA |
|---|---|---|
| FLUDD, JOVAN | 06A2055 | 6-37-12 |

| 2. LOCATION OF INCIDENT ◆ Lugar del incidente | INCIDENT DATE ◆ FECHA | INCIDENT TIME ◆ HORA |
|---|---|---|
| 6-37-12 | 8-9-2007 | 100 |

3. RULE VIOLATION(S) ◆ VIOLACION/ES

180.11 COMPLY WITH CORRESPONDENCE PROCEDURES

106.10 DIRECT ORDERS

4. DESCRIPTION OF INCIDENT ◆ DESCRIPCIÓN DEL INCIDENTE

On the above time and date I received information from Court Appointed Special Master Bodek that inmate Fludd has tried to circumvent directives 4421 & 4421 with his outgoing mail. Inmate Fludd wrote to The Americans Bulletin requesting that a credit owed him be forward to a Edward R. Hamilton, Book Seller. In this correspondence inmate Fludd included a second letter and requested The Americans Bulletin foward it to Edward R. Hamilton, Book Seller. By his request inmate Fludd tried to have The Americans Bulletin "kite" his correspondence to Edward R. Hamilton. Inmate Fludd has been found guilty on (2) other misbehavior reports for similar violations, on 8-8-06 and 8-2-04. By disposition inmate Fludd was ordered to stop this activity and comply with correspondence procedures.

| REPORT DATE ◆ FECHA | REPORTED BY ◆ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ◆ FIRMA | TITLE ◆ TÍTULO |
|---|---|---|---|
| 8-9-07 | D. Kaczmarak | D B S h | SGT. |

5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)     SIGNATURES:

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)          FIRMAS     1. _____

2. _____     3. _____

**NOTE:** Fold back Page 2 on dotted line before completing below.

DATE AND TIME SERVED UPON INMATE   8/10/07   9:15 pm

FECHA Y HORA DADO AL RECLUSO

NAME AND TITLE OF SERVER   J. Hodges C.O.
NOMBRE Y TITULO DEL QUE ENTREGA

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la información derivada de ella en una demanda criminal.

## NOTICE ◆ AVISO

REVIEWING OFFICER (DETACH BELOW STATEMENT FOR VIOLATION HEARING ONLY)

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held.
Por este medio se le notifica que el informe anterior es un cargo formal el cual se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals.
Se le permitirá al recluso llamar testigos con tal de que al hacerlo no pondrá en peligro la seguridad de la institución o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement.
Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su representante antes de la audiencia para que haga una declaración acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

EXHIBIT
B

NYS Department of Correctional Services
# WENDE CORRECTIONAL FACILITY

## MEMORANDUM

**TO:**      J. Fludd  06A2055  D 23/01

**FROM:**   W. Smith,  **Deputy Superintendent for Programs**

**DATE:**    August 29, 2006

**SUBJ:**    **Verbal Assault**

---

I just read the document you sent to Sr. Correction Counselor Catalfu dated 08/25/06.

I found it very disturbing that you would make such allegations that are totally out of character with this professional staff person.

I suggest you make better use of your time and energy.


WS:jw

c:  SCC Catalfu
    Guidance file
    file

EXHIBIT

C

FORM 2168 (REV. 6/93)        STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES
(XEROX LOCALLY AS NEEDED)

_____ WENDE _____   CORRECTIONAL FACILITY

Check One        [X] - ADMINISTRATIVE SEGREGATION RECOMMENDATION

                 [ ] - INVOLUNTARY PROTECTIVE CUSTODY RECOMMENDATION

1. INMATE NAME ___Fludd, J.___   DIN___06A2055___   CELL___D-23-1B___

2. REASON FOR THIS RECOMMENDATION:

On April 11, 2006 Inmate Fludd, J. #06A2055 was served a copy of a Court Order and Injunction outlining various constraints placed on him during his incarceration. Inmate Fludd was made well aware of the constraints outlined within the court order. Inmate Fludd was transferred to the Wende Correctional Facility from the Sing Sing Correctional Facility on July 14, 2006. Since his arrival Inmate Fludd has attempted circumventing the Court Order on 7/24/06 and 8/4/06 by attempting to kite mail out through third parties. The kites were discovered by mail room staff. Inmate Fludd was issued misbehavior reports for both incidents. He was seen at tier hearings and received dispositions for violating Facility correspondence procedures. Finally, a letter was received by Inmate Fludd from the Stuff Magazine Company which indicates that Fludd has kited a letter out to the company in an attempt to get a magazine subscription without paying for it.

This writer recommends that Inmate Fludd be placed in the Wende S.H.U. in Administrative Segregation status. While housed in S.H.U. the facility will be better able to keep Fludd in compliance with the Court Order. The structured environment will limit Fludd's ability to circumvent the Court Order.

Therefore, Fludd should be held in Administrative Segregation for the safety and security of the facility and to keep Fludd in compliance with the Court Order.

| 9/11/06  8:00 am | M. Kearney | | Capt. |
|---|---|---|---|
| Date/Time | Name of Person Making Recommendation | Signature | Title |

3. IS INMATE CONFINED PENDING A DETERMINATION ON THIS RECOMMENDATION? [X] YES  [ ] NO

4. IF YES,

    a. HOUSING UNIT OF PRESENT CONFINEMENT ___G Block___   CELL___42-13___

    b. AUTHORIZED BY: ___Capt. Kearney___

**NOTICE TO INMATE:** A hearing will be conducted within 14 days of this recommendation in accordance with the provisions of Part 254 of Chapter V. You will be entitled to call witnesses on your own behalf provided that doing so does not jeopardize institutional safety or correctional goals.

If restricted pending a hearing on this recommendation you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued confinement.

| DISTRIBUTION: | ORIGINAL | -INMATE |
|---|---|---|
| | COPY | -DISCIPLINARY OFFICE |

09/12/06      STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES    PAGE
ICP00a            ADMINISTRATIVE SEGREGATION       HEARING DETERMINATION

                WENDE                                    TAPE NUMBER

IIN: 06A2055 NAME: FLUDD, JUVAN                          LOCATION: 06-37-016

RECOMMENDATION DATE & TIME:  09/11/06      08:00 AM

DELIVERY DATE & TIME:      09/11/06     03:18 PM     BY:  CO   DAVIS

HEARING DATE & TIME:     9/18/06 10:57 AM   BY: CHO Bennett

HEARING END DATE & TIME:  9/25/06 7:12 PM

CHARGE
NUMBER      DESCRIPTION OF CHARGES           REPORTED BY          DISPOSITION

999.99    ADMINISTRATIVE SEGREGATION       CAPT  KEARNEY          Denied

STATEMENT OF EVIDENCE RELIED UPON:   The Administrative Segregation
RECOMMENDATION does Not itself spell out a case showing
that this inmate's continued PRESENCE IN general
population would PRESENT A threat to the safety and
SECURITY of this Facility. other INMATES OR EMPLOYEES.
MOREOVER the 2 ~~AR~~ incidents cited in the REPORT
where this inmate WAS found guilty of CORRESPONDENCE
-violations did Not RELATE to ANY threat to the
WENDE Correctional Facility, its ~~of~~ EMPLOYEES
to the effect that

REASON FOR DETERMINATION:

OR INMATES. While there WAS TESTIMONY that inmate Fludd
subsequent INVESTIGATION indicated
WAS in the process of filing A FALSE CLAIM against AN
EMPLOYEE of the WENDE Correctional Facility and while
such conduct MAY BE found to threaten the FINANCIAL
SECURITY of the staff Member involved, such EVIDENCE
CANNOT BE used to sustain A RECOMMENDATION that WAS MADE
PRIOR to its discovery.

I HAVE RECEIVED A COPY OF THIS DETERMINATION DATED:

_____        _____       _____
HEARING OFFICER                     INMATE SIGNATURE             DATE AND TIME RECEIVED
   SIGNATURE

NOTICE TO INMATE:
YOU ARE HEREBY NOTIFIED THAT YOU MAY COMMUNICATE IN WRITING WITH THE
COMMISSIONER CONCERNING THIS MATTER WITHIN 30 DAYS OF YOUR RECEIPT OF THIS
DETERMINATION.



SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY : PART 56
-----------------------------------------------X

The People of the State of New York

        - against -

Jovan Fludd (8071552K, 06-A-2055),

                   Defendant.
-----------------------------------------------X

Indictment Number
2081/2005

AFFIDAVIT

STATE OF NEW YORK   )
                   ) ss:
COUNTY OF ERIE       )

       Robert A. Kirkpatrick, being duly sworn deposes and says:

1)     I am the superintendent of Wende Correctional Facility located in Alden, New York.

2)     I make this affidavit to set forth the circumstances relating to the Department of Correctional Services' ("DOCS") enforcement of Judge Arlene Goldberg's March 13, 2006 Order imposing certain restrictions on inmate Jovan Fludd (06-A-2055). That order imposed certain restrictions on inmate Fludd, including but not limited to a requirement that all of his mail be given by him to DOCS and sent by DOCS to the Court-Appointed Special Master for review before it is sent on to the addressee, and a limitation that he could only make phone calls to defense counsel.

3)     I am fully familiar with the facts and circumstances of inmate Fludd's confinement at Wende Correctional Facility, the order issued by the Honorable Arlene D. Goldberg dated March 13, 2006, and inmate Fludd's criminal history. Prior to making this affidavit I have conferred with members of my staff who are familiar with inmate Fludd and with our facility operations, with DOCS Central Office staff including with the DOCS' Deputy Commissioner and General Counsel, and with the Court-Appointed Special Master in this case.

4)     DOCS recognizes the serious nature of inmate Fludd's conduct in his most recent case, New York County Indictment 2081/2005, where he was convicted of Offering a False Instrument for Filing in the First Degree (3 counts), Falsifying Business Records in the First Degree (3 counts), and Obstructing Governmental Administration in the Second Degree (1 count), stemming from his filing of false UCC-1 forms against judges, prosecutors, defense counsel and witnesses from a prior case where he had been convicted of Forgery in the Second Degree under New York County Indictment 7095/2002.

5)     Our concern was heightened when we noted the circumstances of his prior incarceration on his conviction for Forgery in the Second Degree under New York

County indictment 7095/2002. In that case, he sent out forged jury questionnaires to residents of New York County in furtherance of a larcenous endeavor. The questionnaires were to be returned to a mailbox which he rented. This would enable him to use the identifying information he would gather from these forged juror questionnaires to obtain credit cards in the names of those persons and to then use those credit cards for his own benefit.

6)      The seriousness of inmate Fludd's conduct, which targets judges, prosecutors, defense counsel and others by filing false UCC-1 forms in his favor against them, without lawful basis, has a very real potential of impacting negatively on the credit ratings and economic functioning of those judges, prosecutors, defense attorneys and others. More importantly, such conduct poses a threat to the integrity of the criminal justice and judicial process. Additionally, inmate Fludd's prior conviction for sending out forged jury questionnaires, as noted above, also involved behavior that posed a threat to the integrity of the judicial process.

7)      While in the general population at Wende Correctional Facility ("Wende"), inmate Fludd was able to send out letters on at least two occasions, using the name of another inmate as the return address on the envelope. While the three letters in the first incident were erroneously returned to him because of an accidental failure to forward Judge Goldberg's March 13, 2006 order to Wende by Sing Sing Correctional Facility upon inmate Fludd's transfer to Wende, the letters in the second incident had been copied and the copies were sent to the Court-Appointed Special Master, when we finally received the order from Sing Sing. The two letters in the second incident indicated that inmate Fludd  was (a) seeking information about judges, the Court-Appointed Special Master, prosecutors and defense counsel in a letter to the Records Access Officer in the Office of the Secretary of State and (b) that he was seeking to establish an account with the Department of Motor Vehicles whereby he could obtain information about driver's license applications, vehicle registrations and other Department of Motor Vehicles information relating to persons other than himself, in his letter to that agency. This certainly added to our concerns about inmate Fludd's ongoing course of conduct.

8)      When it was discovered that inmate Fludd had sent out these letters using another inmate's name on the return address, in consultation with appropriate DOCS Central Office staff, he was placed in Administrative Segregation.  However, the hearing officer reviewing that placement found that it was not appropriate under DOCS rules because his conduct did not present threat or danger to the safety and security of the institution.  DOCS has no right of appeal from that decision.

9)      Given DOCS' serious concerns for the consequences to the individual judges, prosecutors, defense attorneys and others he may target, DOCS has made every effort to enforce Judge Goldberg's March 13, 2006 order.

10)     Unless Judge Goldberg, in the exercise of her judicial authority to make such orders as are necessary to carry out her lawful order, in this case her lawful March 13, 2006 order, by issuing an order authorizing DOCS to maintain inmate Fludd in restrictive confinement, DOCS will not be able to enforce effectively those portions of

Judge Goldberg's March 13, 2006 order relating to mail and phone restrictions because inmate Fludd will be able to drop off letters for mailing using other inmate's names and to make calls using other inmate's PIN numbers, which we will be unable to control, with the resultant serious risk that inmate Fludd will continue making further baseless, vexatious or frivolous administrative or judicial filings.

11)   DOCS' Counsel and I have reviewed the proposed order dated September 28, 2006. DOCS consents to that order being entered and will endeavor to comply fully with that order if it is entered.

12)   DOCS' Counsel has informed me that it is DOCS' legal position that it does not have standing to apply to a local court for amendment of Judge Goldberg's order. Both the Office of Counsel and I have made Judge Goldberg aware, through the Court-Appointed Special Master, of our inability to enforce effectively at this juncture those portions of her March 13, 2006 order relating to mail and phone restrictions if inmate Fludd is required to be released from administrative segregation.

13)   Absent judicial authorization from Judge Goldberg authorizing DOCS to maintain inmate Fludd in restrictive confinement, DOCS will be unable to enforce effectively Judge Goldberg's March 13, 2006 order insofar as it relates to mail and phone restrictions, regardless of which DOCS facility inmate Fludd could be housed.


Robert A. Kirkpatrick
Superintendent
Wende Correctional Facility


On this 28th day of September, 2006, at Wende Correctional Facility, Robert A. Kirkpartrick, known to me personally as the Superintendent of that facility appeared before me and swore and subscribed to the above affidavit.


Notary Public

DANIELA POWELL
Notary Public, State of New York
Qualified in Erie County
Commission Expires November 30, 20 06

- 3 -

EXHIBIT

E

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY : PART 56
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

The People of the State of New York                   :

            - against -                      :

Jovan Fludd (8071552K, 06-A-2055),            :

                        Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Indictment Number
2081/2005

ORDER FOR
RESTRICTIVE
CONFINEMENT

        Whereas pursuant to the provisions of this Court's prior order dated March 13, 2006, the Court-Appointed Special Master has provided this Court with two letters forwarded to him by the New York State Department of Correctional Services ("DOCS") which were mailed by the defendant using the return address of another inmate in his housing area (so-called "kiting" which is a violation of DOCS rules and regulations), in direct violation of this Court's March 13, 2006 Order, and

        Whereas the two letters in question, the first letter addressed to the Records Access Officer of the Office of the Secretary of State which sought information about the seven judges who were involved in either the above captioned case (for which he is confined under DIN # 06-A-2055) or his prior case (for which he was confined under DIN # 04-A-2615), the Court-Appointed Special Master ("Special Master") in this case, three assistant district attorneys from the Office of the District Attorney of New York County (the assistant district attorney who prosecuted him under the prior case noted herein, the assistant district attorney who prosecuted him under the current case noted herein, and the assistant district attorney who successfully brought the civil action again this defendant to vacate the UCC-1 which he had filed against the assistant district attorney who prosecuted him in the prior case noted herein), and his defense attorney (assigned counsel) in the above captioned case, and the second letter addressed to the New York State Departmental of Motor Vehicles ("DMV") seeking to open an account with them through which he could obtain DMV records of persons relating to their driver's licenses, vehicle registrations and driving records, and

        Whereas records supplied by DOCS reveal that a disciplinary hearing with regard to the defendant's conduct as described above was held at Wende correctional facility on August 8, 2006.  The hearing officer found that based on the defendant's testimony in which he admitted attempting to mail out the two letters described in the prior paragraph of this order using an envelope with another inmate's name as the return address on the outside of that envelope and the mailroom clerk's written report about this incident were sufficient to sustain the allegations.  The defendant did not appeal the hearing officer's findings, and



People v. Jovan Fludd (8071552K, 06-A-2055)
Order for Restrictive Confinement
September 29, 2006 - Page 2 of 4

      Whereas records supplied by DOCS reveal that the defendant had previously been subject to a disciplinary hearing for sending out three letters using an envelope with another inmate's name as the return address on the outside of that envelope. A a disciplinary hearing with regard to the defendant's conduct was held on August 2, 2006. The hearing officer found that based on the evidence of the letters and the defendant's admission to having sent the three letters out in an envelope with another inmate's name as the return address, he was guilty of violating DOCS inmate rules. The letters were returned to the defendant by the hearing officer after the hearing and are not available. The defendant appealed the hearing officers decision and that decision was upheld by the facility's deputy superintendent for security on August 8, 2006, and

      Whereas since late August of this year, the Special Master has conferred on several occasions with the Superintendent, Deputy Superintendent for Administration and the Senior Correctional Counselor at Wende Correctional Facility about this defendant and his conduct. During the week of September 18, 2006, the defendant was placed in Administrative Segregation by DOCS in order to prevent him from sneaking out correspondence through other inmates in violation of this Court's order. On September 26, 2006, the Superintendent of Wende Correctional Facility contacted the Special Master and informed him that the hearing officer who conducted the hearing into this defendant's placement in Administrative Segregation determined that such placement was not permitted under DOCS rules and regulations because his behavior did not pose a threat or danger to the safety or security of the facility. The Superintendent informed the Special Master that he had consulted with the DOCS' General Counsel and other staff attorneys in the DOCS Office of Counsel about this matter and there was agreement that DOCS could not effectively enforce this Court's March 13, 2006 Order (which was designed to protect judges, prosecutors, defense counsel, court staff and witnesses who had cooperated against him in criminal proceedings from being the target of his filing UCC-1 forms in his favor against them, without lawful basis, which has the real potential of impacting negatively on their credit ratings and economic functioning) unless this defendant was placed in restrictive confinement. The Special Master has also consulted on several occasions with the assigned staff attorney at the DOCS Office of Counsel about this defendant and his conduct before, on and after September 26, 2006, and

      Whereas the Special Master, who has been appointed by various judges of this court in many cases involving inmates who require special handling, including those who have posed a threat or danger to judges, prosecutors, defense counsel and witnesses, has informed this Court that he has urged DOCS on several occasions in the past to establish a policy with regard to the rare occasions where inmates require special handling and housing because they pose a threat or danger to judges,

People v. Jovan Fludd (8071552K, 06-A-2055)
Order for Restrictive Confinement
September 29, 2006 - Page 3 of 4

prosecutors, defense counsel and witnesses, but that no such policy has been instituted, and

Whereas this Court adopts each of the findings of fact and conclusions of law contained in its March 13, 2006 order as if they were repeated, in full, herein, and

Whereas having heard the testimony of the Special Master, reviewed the materials he has secured from DOCS, including but not limited to the September 28, 2006 affidavit of Robert A. Kirkpatrick, Superintendent of Wende Correctional Facility, and noting that the Special Master has spoken to the attorney at DOCS' Office of Counsel who is assigned to this matter and that they have reviewed this order, have indicated that DOCS consents to this order being entered and will endeavor to comply fully with this order, and that DOCS has indicated that it will not be able to enforce effectively this Court's March 13, 2006 order without this order being entered,

Whereas based on all of the foregoing this Court finds that: (1) the defendant has violated this Court's March 13, 2006 order by mailing out letters using the return address of another inmate as described above, (2) in the absence of a DOCS rule or regulation that addresses these rare situations, and (3) based on DOCS' indication that: (a) it consents to the issuance of this Order, (b) DOCS will endeavor to carry it out, and (c) issuance of such an order is necessary to enable DOCS to enforce effectively this Court's March 13, 2006 order, this Court has the inherent power to issue this order to assure that its March 13, 2006 order can be carried out properly and effectively and that the restrictive confinement ordered herein is essential to that order being carried out.  It is,

**ORDERED** that DOCS shall take such steps that it deems necessary, including placement of this defendant in restrictive housing, in order to limit his ability to have contact with other inmates through whom he may attempt to send out additional correspondence or whom he may convince to write to other persons on his behalf asking them to send out impermissible materials on his behalf in violation of this Court's March 13, 2006 order.  It is further

**ORDERED** that DOCS shall not permit this inmate to obtain envelopes or postage stamps.  It is further

**ORDERED** that DOCS shall enforce the following amendment to this Court's March 13, 2006 order, which overrides and replaces any conflicting provision in that order:  Any time the defendant wishes to send out a letter, he shall provide the letter to his housing area officer or such other person whom the superintendent of the facility where he is housed assigns.  Defendant shall place a face sheet on the letter in which he clearly prints the name and address of the person to whom he is addressing the



**People v. Jovan Fludd (8071552K, 06-A-2055)**
**Order for Restrictive Confinement**
September 29, 2006 - Page 4 of 4

letter and the nature of his relationship with that person.  Once received in this format, the letter will be transmitted to the Special Master in accordance with the procedures the facility has established to forward such letters to the Special Master.  It is further

      **ORDERED** that this order shall be enforced pending any further order of this Court.  This order having being granted *ex-parte*, it is entered without prejudice to defendant or defense counsel seeking *vacatur* or modification of any or all of its terms on notice to the People, DOCS' Office of Counsel and the Court-Appointed Special Master.

      **ORDERED** that the Court-Appointed Special Master shall serve a copy of this Order upon the Office of the District Attorney of New York County and defense counsel, Michael Rodi, Esq., and shall arrange for DOCS staff designated by the Superintendent of Wende Correctional Facility to serve a copy of this Order on the defendant and provide an affidavit of such service to the Special Master who shall then file it with this Court.

      SO ORDERED.

Dated:     New York, New York
             September 29, 2006

                                      HONORABLE ARLENE D. GOLDBERG
                                          Justice of the Supreme Court

EXHIBIT
F

FORM 2168 (REV. 6/93)        STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES
(XEROX LOCALLY AS NEEDED)

_____WENDE_____ CORRECTIONAL FACILITY

Check One        [X] - ADMINISTRATIVE SEGREGATION RECOMMENDATION

                 [ ] - INVOLUNTARY PROTECTIVE CUSTODY RECOMMENDATION

1. INMATE NAME ___Fludd, J.___        DIN___06A2055___   CELL__G-37-12__

2. REASON FOR THIS RECOMMENDATION:

    Inmate Fludd's property was being processed and frisked on 9/8/06 prior to being viewed by Inmate Fludd. During this process several completed UCC-1 financial statement forms were recovered from his property. These forms were for several employees of the Wende Correctional Facility (See attached).
    Inmate Fludd's criminal convictions involved the filing of similar forms against prosecutors and the threats to file liens against judges in connection with his criminal prosecutions.
    Inmate Fludd has been issued misbehavior reports for violating the department's correspondence directives in the past. Those disciplinary sanctions were ineffective in gaining Inmate Fludd's compliance with the directives. He refused to stop this type of behavior.
    Inmate Fludd's presence in general population poses a threat to the safety and security of the facility and it's staff by giving him the ability to file false UCC-1 forms in an attempt to gain personal information about employees and place liens on their assets. I recommend that Inmate Fludd be placed in Administrative Segregation where his correspondence can be closely monitored for the safety and security of the facility and it's staff. Inmate Fludd's behavior is, and has been, inconsistent with DOCS rules against inmates harassing staff and attempting to obtain personal staff information.

| 3/20/08    3:00 pm | J. Noeth | J. Noeth | Lieutenant |
|---|---|---|---|
| Date/Time | Name of Person Making Recommendation | Signature | Title |

3. IS INMATE CONFINED PENDING A DETERMINATION ON THIS RECOMMENDATION? [X] YES [ ] NO

4. IF YES,

    a. HOUSING UNIT OF PRESENT CONFINEMENT ___SHU   G-37___   CELL____12____

    b. AUTHORIZED BY: ___Captain Kearney___

NOTICE TO INMATE: A hearing will be conducted within 14 days of this recommendation in accordance with the provisions of Part 254 of Chapter V. You will be entitled to call witnesses on your own behalf provided that doing so does not jeopardize institutional safety or correctional goals.

If restricted pending a hearing on this recommendation you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued confinement.

DISTRIBUTION:        ORIGINAL        -INMATE
                     COPY            -DISCIPLINARY OFFICE

03/24/08  STATE OF NEW YORK – DEPARTMENT OF CORRECTIONAL SERVICES  PAGE  1
OCP006  ADMINISTRATIVE SEGREGATION    HEARING DETERMINATION

WENDE

TAPE NUMBER  08-0271 *272

DIN: 06A2055 NAME: FLUDD, JOVAN

LOCATION: OG-37-012

RECOMMENDATION DATE & TIME:  03/20/08    03:00 PM

DELIVERY DATE & TIME:    03/21/08    12:00 PM    BY: CO   / HODGES

HEARING DATE & TIME:    4 / 1 / 8   9: 22 AM    BY: _____

HEARING END DATE & TIME:  4 / 1 / 8   12: pm

| CHARGE NUMBER | DESCRIPTION OF CHARGES | REPORTED BY | DISPOSITION |
|---|---|---|---|
| | | | ADmin. Seg. |
| 999.99 | ADMINISTRATIVE SEGREGATION | LT  NOETH | Substantiated |

1. STATEMENT OF EVIDENCE RELIED UPON: The recommendation, your written & oral submissions, your discipline record, the Appellate Division decision, the testimony of a previous hearing officer, and the author of the recommendation were all considered. There is substantial evidence of your continued attempts to violate established DOCS and commercial code policies, by using the commercial code to harass and injure different members and employees of the criminal justice system. Judges, prosecuting attorneys and the peace & security of this facility and the entire system. Per the credible testimony of Lt. Noeth, your presence in do so is a threat to the facility in its obligation to provide appropriate placement for an individual administrative segregation assists the

2. REASON FOR DETERMINATION: whose callous disregard for others such as those listed above, mandates that you be placed in administrative segregation because of the threat you present to this or any other NYSDOCS facility in which you may be incarcerated.

I HAVE RECEIVED A COPY OF THIS DETERMINATION DATED:  _____

_____        _____        4/4/8        12:26pm
HEARING OFFICER                INMATE SIGNATURE              DATE AND TIME RECEIVED
SIGNATURE

NOTICE TO INMATE:

YOU ARE HEREBY NOTIFIED THAT YOU MAY COMMUNICATE IN WRITING WITH THE COMMISSIONER CONCERNING THIS MATTER WITHIN 30 DAYS OF YOUR RECEIPT OF THIS DETERMINATION.

EXHIBIT
G