# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

JOVAN FLUDD,

                                        Plaintiff,

                                                              DECISION & ORDER

                    -vs-
                                                              10-CV-6603-CJS

BRIAN FISCHER, *et al.*,

                                        Defendants.

## APPEARANCES

For Plaintiff:            Jovan Fludd, *pro se*
                          06A2055
                          Wende Correctional Facility
                          P.O. Box 1187
                          Alden, New York 14004

For Defendants:           Gary Levine, A.A.G.
                          New York State Office of the Attorney General
                          144 Exchange Blvd, Suite 200
                          Rochester, NY 14614

## INTRODUCTION

**Siragusa, J.** Plaintiff Jovan Fludd filed this pro se action seeking relief under 28

U.S.C. § 1983. The case is now before the Court on Defendants' motion to dismiss the 96-

page complaint and for summary judgment, filed January 12, 2011, ECF No. 6. For the

reasons stated below, Defendants' application is granted.

## FACTUAL BACKGROUND

In his complaint, Plaintiff alleges forty-one violations of his constitutional rights by

eleven defendants. Compl., Oct. 25, 2010, ECF No. 1.  For all relevant times, Plaintiff has

been an inmate of New York State Department of Correctional and Community Services

("DOCCS"), housed at the Wende Correctional Facility ("Wende"). All of the named defendants are involved in some capacity with DOCCS.

On January 20, 2006, Plaintiff was convicted of multiple counts of offering a false instrument for filing, falsifying business records, and obstructing governmental administration. These convictions were all based upon Plaintiff's actions, while incarcerated on a prior conviction, of illegally filing UCC-1 financing statements falsely naming as debtors various judges, prosecutors, clerical staff and other individuals involved in his prior criminal prosecution.[1] The sentencing judge, the Honorable Arlene Goldberg, ordered restrictions on Plaintiff to be imposed by DOCCS during his incarceration, including mail restrictions. On or about September 28, 2006, in response to two incidents of Plaintiff circumventing his mail restrictions, Judge Goldberg issued a supplemental order directing Plaintiff's placement in the Special Housing Unit ("SHU"). Accordingly, Defendants held Plaintiff in SHU. On March 18, 2008, Judge Goldberg's supplemental order was overturned by the New York State Appellate Division, holding that the sentencing court lacked authority to issue a post-judgment order controlling confinement. *Fludd v. Goldberg*, 51 A.D.3d 153 (N.Y. App. Div. 2008).

On March 20, 2008, defendant Anthony Annucci, Deputy Commissioner of DOCCS, ("Annucci") directed defendant Robert Kirkpatrick, Superintendent of Wende, ("Kirkpatrick")

---

[1]The Appellate Division notes that filing false UCC-1 financing statements "is a practice employed with some regularity by inmates . . . against public officials as a means of harassment." *Fludd*, 51 A.D. at 161. "Although these baseless filings are not legally effective to create an enforceable lien, and indeed, the filer may be subject to civil and criminal sanctions and penalties, nevertheless a record of the filing exists in the public database. Since there appears to be no means for the victim of a bogus lien to completely remove or expunge the unauthorized UCC-1 statement, the filing, though false, may be found by an entity conducting a lien search, and may interfere with the named individual's ability to obtain credit or conduct other financial affairs such as the purchase and sale of property." *Id.*

to draft an administrative segregation recommendation regarding Plaintiff, which was completed by defendant Corrections Captain Joseph Noeth ("Noeth"). The recommendation was based on a September 2006 search of Plaintiff's cell that found more UCC-1 forms (involving DOCCS employees), his prior convictions for false UCC-1 forms, and multiple violations of his mail restrictions. Pl.'s Ex. F, ECF No. 1. Defendant Hearing Officer Curtis Drown, ("Drown") conducted an administrative hearing that concluded on April 1, 2008. Drown ordered that "[Plaintiff] be placed in administrative segregation because of the threat [he] present[s] to this or any NYS DOCS facility in which [he] may be incarcerated." *Id*. Drown's decision was later affirmed by defendant Norman Bezio, Director of Special Housing Unit at Wende ("Bezio") on administrative appeal, on or about June 18, 2008. On or about April 14, 2008, Plaintiff (represented by an attorney) submitted an Article 78 petition to annul the April 1, 2008 administrative segregation decision. Plaintiff's Article 78 petition was denied by the New York State Appellate Division, which affirmed the administrative segregation hearing decision. *Fludd v. New York State Dept. of Corr. Servs.*, 62 A.D.3d 1149 (N.Y. App. Div. 2009). As a result, Defendants continued to hold Plaintiff in administrative segregation. Plaintiff claims that his SHU cell is poorly ventilated, has a plexiglass door, and is often unsanitary. *See* Compl. ¶¶ 214–20, ECF No. 1; Defs.' Rule 56 Statement ¶ 13, ECF No. 7.

On April 10, 2008, April 17, 2008 and June 3, 2008, Kirkpatrick imposed correspondence restrictions on Plaintiff. Plaintiff filed an administrative grievance with the Central Office Review Committee ("CORC") to protest the mail restrictions. Upon review, CORC concluded that "the mail restrictions in place are the result of the grievant's harassment of Department employees and private citizens via the correspondence

program, and are rationally related to a legitimate penological interest in maintaining the security and order of the correctional facility." Defs. Ex. B at 32, ECF No. 9-2. In response, Plaintiff submitted a new Article 78 petition to annul the DOCCS mail restrictions. The state court held that Plaintiff "failed to establish that [DOCCS employees] acted arbitrarily and capriciously" in the management of his mail and denied his request for Article 78 relief. Defs.' Ex. B at 68, ECF No. 9-2.

On or about June or July 2009, defendant Deputy Superintendent Karen Crowley ("Crowley") implemented a procedure that limited law library access for all SHU inmates. The new procedure was in response to an incident of law books being destroyed by SHU inmates. In accordance with this policy, SHU inmates were provided with photocopies of law books rather than being given the actual books themselves. The policy was limited in duration and by July 6, 2010, SHU inmates were permitted access to the law books again.

In this § 1983 action, Plaintiff asserts several claims.[2] First, Plaintiff alleges that his constitutional rights were violated by Defendants' enforcement of Judge Goldberg's court orders. Plaintiff further alleges that the administrative segregation hearing decision after Judge Goldberg's orders were vacated also violated his constitutional rights. Second, Plaintiff alleges that while in administrative segregation he was denied meaningful status reviews and, for two time periods, he was denied status reviews entirely. Third, Plaintiff alleges that the mail restrictions imposed by Defendant Kirkpatrick in April-June 2008

---

[2]In the Complaint, Plaintiff details five distinct allegations, listed under the headings of numbered "claims." Each "claim" details the relevant facts and allegations, and then includes several related "causes of action." Since all of Plaintiff's "causes of action" involve the same facts and allegations, the Court considers each subsidiary "cause" as part of the main "claim" it is listed under.

violated his First Amendment rights. Fourth, Plaintiff alleges that the restriction of law library materials violated his right of access to court. Finally, Plaintiff alleges that the conditions of his cell in SHU violated his Eight Amendment rights to be free from cruel and unusual punishment. Defendants filed this motion on January 12, 2011, ECF No. 6.[3]

### STANDARDS OF LAW

**Motion to Dismiss**

The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted).  *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a

---

[3] Defendants' motion for summary judgment was served and filed with "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," accompanied by the full *Irby* notice attached in ECF No. 8-1, Ex. A, pursuant to W.D.N.Y. Local R. Civ. P. 56.2.

claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)). As the Supreme Court clarified in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678–79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

Inasmuch as plaintiff is proceeding pro se, this Court must, of course, follow the direction of the the Second Circuit, that,

> A pro se complaint should not be dismissed unless "it appears beyond doubt that the plaintiffs can prove no set of facts in support of [their] claims

> which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46
> (1957). When considering motions to dismiss a pro se complaint such as
> this, "courts must construe [the complaint] broadly, and interpret [it] to raise
> the strongest arguments that [it] suggests." *Cruz v. Gomez*, 202 F.3d 593,
> 597 (2d Cir. 2000) (internal quotation marks omitted). This is especially
> true when dealing with pro se complaints alleging civil rights violations. *See*
> *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). Accordingly, the
> plaintiffs' allegations in this case must be read so as to "raise the strongest
> arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280
> (2d Cir. 1999) (internal quotation marks omitted).

*Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 145-146 (2d Cir. 2002).

### Summary Judgment

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds*; *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

**ANALYSIS**

*Official Capacity Claims and Personal Involvement*

Plaintiff makes all of his claims against the Defendants "in their official and individual capacity." Pl.'s Mem. in Opp'n, ECF No. 28 at 5. Suits against government officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 n.55 (1978). "[T]he Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (internal citations omitted). Defendants in the present action are all employees of DOCCS, a state governmental agency. Claims brought against these government employees in their official capacities are necessarily brought against the State of New York. Since the State is immune from suits for damages in federal court, Defendants' motion to dismiss is granted as to Plaintiff's claims against Defendants in their official capacities.[4]

To sue a public official in his personal capacity in a § 1983 action, "it is enough to show that the official, acting under the color of state law, caused the deprivation of a federal right." *Id.* at 166. The liability of that official, though, is based on his personal involvement. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this circuit that personal involvement of defendants in alleged constitutional deprivations is a

---

[4]In this Decision and Order, the Court only addresses Plaintiff's claims for damages. Plaintiff's requests for injunctive relief regarding his confinement and his correspondence restrictions are addressed in separate orders, corresponding with Plaintiff's separate motions.

prerequisite to an award of damages under § 1983."). With regard to the standard for

personal involvement, this Court held in *Bryant v. County of Monroe* that:

> [I]n 2009, the Supreme Court held, "[b]ecause vicarious liability is inapplic-
> able to ... [section] 1983 suits, a plaintiff must plead that each Govern-
> ment-official defendant, through the official's *own individual actions*, has
> violated the Constitution ." [*Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937,
> 1948, 173 L. Ed. 2d 868 (2009) (emphasis added).] The Supreme Court
> explicitly rejected the argument that, "a supervisor's mere knowledge of his
> subordinate's discriminatory purpose amounts to the supervisor's violating
> the Constitution." [Id. at 1949.] Thus, "[a]bsent vicarious liability, each
> Government official, his or her title notwithstanding, is only liable for his or
> her own misconduct." [*Id.*] For example, "[t]he allegation that plaintiff sent
> defendant [ ] letters complaining of prison conditions is not enough to allege
> personal involvement.

No. 09-CV-6415-CJS, 2010 WL 4877799 at *3 (W.D.N.Y. Nov. 22, 2010) (alterations in

original) (quoting *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801 (SAS), 2009 WL

1835939 at *4 (S.D.N.Y. June 26, 2009)). Defendant's liability, therefore, must be analyzed

according to each Defendant's personal conduct.

### *Enforcement of Court Orders*

Plaintiff alleges that defendants Brian Fischer, Commissioner of DOCCS,

("Fischer"), Annucci and Kirkpatrick are liable for violations of his constitutional rights

caused by their enforcement of Judge Goldberg's court orders. Compl. ¶¶ 123-27.

Government officials carrying out a facially valid court order are entitled to immunity to suits

for damages under § 1983. *Roland v. Philips*, 19 F.3d 552, 556 (11th Cir. 1994)

("Therefore, law enforcement personnel, acting in furtherance of their official duties and

relying on a facially valid court order, are entitled to absolute quasi-judicial immunity from

suit in a section 1983 action."); *Valdez v. City and County of Denver*, 878 F.2d 1285, 1288

(10th Cir. 1989) ("Absolute immunity for officials assigned to carry out a judge's orders is

necessary to insure that such officials can perform their function . . . ."); *Respass v. New York City Police Dept.*, 852 F. Supp. 173, 177 (E.D.N.Y. 1994) ("[T]he court finds it highly unlikely that the mere averment that the warden failed to look behind the facial validity of plaintiff's commitment order would state a claim against the Department of Corrections and [warden].").

Fischer, Annucci and Kirkpatrick restricted Plaintiff's mail pursuant to Judge Goldberg's March 13, 2006 court order, and held Plaintiff in segregation pursuant to Judge Goldberg's supplemental September 29, 2006 court order. Both court orders were facially valid when the Defendants carried out the stated restrictions. Since the Defendants' alleged violations were done within their official duties as prison officers and in furtherance of facially valid court orders, they are entitled to absolute quasi-judicial immunity. Thus, Defendants' motion to dismiss is granted as to Plaintiff's claims against Defendants for enforcing Judge Goldberg's court orders.

### Administrative Segregation Hearing

Plaintiff alleges that defendants Kirkpatrick, Noeth, Drown, Fischer, Annucci and Corrections Captain Martin Kearney ("Kearney") violated his constitutional due process rights during the administrative segregation hearing of March 20, 2008, which resulted in his confinement in SHU. Compl. ¶¶ 128–42. Plaintiff has already filed an Article 78 petition challenging the results of the hearing and the New York State Appellate Division issued a decision against him. *Fludd v. New York State Dept. of Corr. Servs.*, 62 A.D.3d 1149 (N.Y. App. Div. 2009). Claims brought in Federal court under § 1983 filed after an unsuccessful Article 78 claim are not barred by res judicata (or "claim preclusion") because money

damages are not available in an Article 78 proceeding. *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004).

The doctrine of collateral estoppel (or "issue preclusion"), however, does apply between Article 78 proceedings and subsequent § 1983 actions. *See Giakoumelos v. Coughlin*, 88 F.3d 56, 59-61 (2d Cir. 1996) (stating that plaintiff's choice to litigate his claims in an Article 78 proceeding includes the risk of collateral estoppel in a subsequent § 1983 action). In *Giakoumelos*, the Second Circuit held:

> Under New York law, the doctrine of collateral estoppel, or issue preclusion, applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and (1) the issue has necessarily been decided in the prior action and is decisive of the present action, and (2) there has been a full and fair opportunity to contest the decision now said to be controlling.

*Id.* (internal quotations omitted). *See also Irish Lesbian & Gay Org. v. Guiliani*, 143 F.3d 638, 644 (2d Cir. 1998).

In his Article 78 proceeding, Plaintiff alleged that (i) he was prejudiced by an eighteen month delay in drafting the administrative segregation recommendation; (ii) he was denied evidence, witnesses, and documents; (iii) he was denied adequate assistance in preparing for the hearing; (iv) he was denied a fair and impartial hearing; (v) the evidence produced was not substantial or sufficient; and (vi) the resulting decision constituted an abuse of administrative authority.[5] The Court's final judgment resolved all of these litigated issues against Plaintiff. *Fludd*, 62 A.D.3d at 1150-53. Because the issues resolved by the Appellate Division in Plaintiff's Article 78 petition are the basis for Plaintiff's

---

[5] Though Plaintiff proceeds pro se in this action, the Court notes that Plaintiff was represented by counsel in his Article 78 petition. Compl. ¶¶ 110–18.

present due process claims involving the administrative segregation hearing, these claims are barred by the doctrine of collateral estoppel.

Furthermore, the claims resolved by the Article 78 decision are also barred by the judicially-created *Rooker-Feldman* doctrine, pursuant to which, "inferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." *Vargas*, 377 F.3d at 205. Plaintiff received a judgment from the New York State Appellate Division on the alleged issues of his administrative segregation hearing prior to the commencement of this action. Plaintiff's request to appeal that court's decision to the New York State Court of Appeals was denied. Compl. ¶ 119. In this § 1983 claim, Plaintiff is effectively asking this Court to review and overturn the state court decision. This court is not permitted to conduct such review. Thus, Plaintiff's claims as to the administrative segregation hearing are subject to dismissal on this ground as well.

Even if any of Plaintiff's due process claims are not barred by the state court proceedings, Plaintiff's claims still fail on the merits. The Second Circuit has held:

> [W]hen a prisoner is confined to SHU for administrative reasons, he is entitled to fewer procedural protections. Generally, prison inmates have no liberty interest in remaining within the general prison population, and out of administrative segregation . . . An inmate confined for administrative reasons is entitled to only minimal process—"some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Ordinarily, a written statement by the inmate to the prison officials who are reviewing his confinement will demonstrate that an inmate has been notified of the charges against him and that he has been given an adequate opportunity to present his views to those officials.

*Matiyn v. Henderson*, 841 F.2d 31, 34 (2d. Cir.1988) (internal citations omitted) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468-76). Defendants wrote an administrative segregation

recommendation on March 20, 2008, in advance of the hearing. Compl. ¶ 51. On March 21, 2008, Plaintiff gave Corrections Officer James Herring (acting as Plaintiff's assistant) a three page request for various documents and witness interviews in preparation for the hearing. *Id.* at ¶ 59; Pl.'s Ex. G at 2, Oct. 25, 2010, ECF No. 1-1. Plaintiff also "prepared several pages of handwritten notes and objections to assist him in presenting his defense in which [sic] he brought with him to the hearing." Compl. ¶ 61. Not only was Plaintiff physically present at the administrative segregation hearing, but his written notes were read aloud and introduced into the administrative record. Based on the facts, Defendants clearly provided Plaintiff with adequate process in his administrative segregation hearing. For the above reasons, Plaintiff's claims as to the administrative segregation hearing are dismissed.

### *Administrative Segregation Status Reviews*

Plaintiff makes two allegations as to his administrative status reviews.  First, Plaintiff alleges that no status reviews occurred between March 20, 2008, and December 2, 2008, or between August 3, 2009, and April 1, 2010. Compl. ¶¶ 168–69. Under the New York state regulations that govern administrative segregation, an inmate in administrative segregation status is entitled to "have such status reviewed every 60 days."  N.Y. Comp. Codes R. & Regs. tit. 7, § 301.4(d).  However, after the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995), this Circuit has held that a prisoner only has a protected liberty interest  if "the deprivation . . . is atypical and significant and the state has created the liberty interest by statute or regulation.'" *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2001) (quoting *Sealey v. Giltner*, 116 F.3d 47, 52 (2d Cir. 1997)) (omission in original).

-14-

The Second Circuit concluded that "a statute or regulation which involves state-created rights creates a protectable liberty interest when an official's failure to adhere to the statute results in an atypical, significant deprivation of real substance, and not simply ephemeral and insubstantial violations." *Id.* at 83 (internal citations and quotation marks omitted); *see also Iqbal v. Hasty*, 490 F.3d 143, 161 (2d Cir. 2007) (quoting *Tellier*, 280 F.3d at 83), *rev'd and remanded on other grounds*, 556 U.S. 662 (2009).

Plaintiff here fails to carry his burden of proof that the alleged deprivation of status reviews resulted in "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.   In *Palmer v. Richards*, the Second Circuit held:

> Where the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required. In those situations, a district court must make a fact-intensive inquiry, examining the actual circumstances of SHU confinement in the case before it . . . .

364 F.3d 60, 64-65 (2d Cir. 2004) (internal citations and quotation marks omitted).  Plaintiff alleges he was deprived of status reviews for periods of approximately 257 and 241 days in duration. In his "Fifth Claim," Plaintiff alleges a conditions of confinement claim based on his SHU cell's poor ventilation, plexiglass door, and regular unsanitariness.  At no point, however, does Plaintiff allege that such conditions are atypical in relation to the general prison conditions.  Consequently, Plaintiff has failed to prove that the conditions of his SHU confinement constituted an atypical deprivation of real substance. Therefore, he cannot prove that he had a protected liberty interest that required Due Process protection.

Second, Plaintiff alleges that the administrative status reviews that *were* conducted during his confinement in SHU were not meaningful.[6] Compl. ¶¶ 170–79. "[A]dministrative segregation may not be used as a pretext for indefinite confinement of an inmate." *Hewitt*, 459 U.S. at 477 n.9. However, "decisions of prison administrators should be given a large degree of deference." *Giano v. Kelly*, 869 F. Supp. 143, 149 (W.D.N.Y. 1994) (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). Administrative status reviews can be done informally and do not require evidence additional to that stated in the original hearing. *Edmonson v. Coughlin*, 21 F. Supp. 2d 242, 253 (W.D.N.Y. 1998) ("a decision to continue a prisoner in [administrative segregation] may be based on the same facts and security considerations that compelled his initial transfer"); *see also Hewitt*, 459 U.S. at 474 ("The judgment of prison officials in this context . . . turns largely on purely subjective evaluations and predictions of future behavior."). The "Sixty-Day Administrative Segregation Review" reports were signed by three officers and ultimately approved by Kirkpatrick, in compliance with DOCCS and New York State procedures. The reports all stated reasons for recommending continued administrative segregation, including further incidents of Plaintiff possessing UCC-1 forms. *See, e.g.*, Pl.'s Ex. I at 11, ECF No. 1-1. In general, each report indicated the collective opinion of the reviewing officers that Plaintiff would be a threat to the safety and security of the facility if allowed to reenter the general population. This Court gives the expert evaluations of prison officials deference and, without clear evidence to the contrary, the Court accepts the given reasons for continued confinement as legitimate and

---

[6] Plaintiff provides copies of the "Sixty-Day Administrative Segregation Review" reports in Ex. I at 7–14, ECF No. 1-1. The dates of the appended reviews are 12/2/08, 2/1/09, 4/1/09, 6/1/09, 8/3/09, 4/1/10, 6/1/10.

not pretext for indefinite confinement. Thus, Plaintiff's claims that he was denied meaningful reviews are dismissed.

### Mail Restrictions

Plaintiff also alleges that Kirkpatrick and Fischer imposed mail restrictions on him that violated his constitutional rights. Compl. ¶¶ 193-96. In Plaintiff's prior Article 78 action protesting his mail restrictions (filed April 23, 2010), he claimed that the mail restrictions violated DOCCS' policy and, in addition, violated his state and federal constitutional rights. Defs.' Ex. B at 7–9, ECF No. 9-2. The state court denied all of Plaintiff's claims. Defs.' Ex. B at 68, ECF No. 9-2. As discussed above, because Plaintiff's constitutional claims were decided by the state court, the claims are barred by collateral estoppel and the *Rooker-Feldman* doctrine.

Even assuming that Plaintiff's claims were not barred, Plaintiff's mail restriction claims would fail on the merits. A prisoner's right to the free flow of mail is protected by the First Amendment. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). This right, however, may be justly restricted to serve legitimate governmental interests. *Procunier v. Martinez*, 416 U.S. 396, 412 (1974). A challenged prison mail restriction is valid "if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006). To show that a given mail restriction is unreasonable an inmate must point to an alternative that "fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." *Turner*, 484 U.S. at 91.In light of Plaintiff's repeated offenses using the mail system and multiple attempts to circumvent his mail restrictions, the mail restrictions imposed on Plaintiff are reasonably

related to the legitimate penological interest of prison safety and security. Furthermore, Plaintiff has not identified any alternatives that would accommodate his rights at a *de minimis* cost to prison safety. Consequently, Plaintiff's mail restriction claims are dismissed.

### Law Library Access

Plaintiff alleges that the restriction of law library materials to SHU inmates for a brief period violated his right of access to court. Compl. ¶ 210. The constitutional right of access to the courts includes the derivative right of meaningful assistance by "providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This right is not absolute, however, and "prison officials may place reasonable restrictions on inmates' use of facility law libraries, as long as those restrictions do not interfere with inmates' access to the courts." *Shell v. Brun*, 585 F. Supp. 2d 465, 468 (W.D.N.Y. 2008). Because law library access is a derivative right, a prisoner must suffer an actual injury to have standing to state a claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("[T]he inmate must therefore go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.").  Plaintiff's claims here fail because he does not allege, nor do the facts indicate, that the law library restrictions caused him any actual harm. To the contrary, Plaintiff adequately pleaded two claims in 2010 (his third Article 78 claim filed April 23, 2010, and this claim filed October 25, 2010), despite the restricted access from about June or July 2010 until July 6, 2010. Therefore, Plaintiff's claims as to the restricted law library access are dismissed.

### Cell Conditions

Lastly, Plaintiff alleges that Defendant Kirkpatrick violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff alleges that his SHU cell is poorly ventilated, has a plexiglass door and is regularly unsanitary. Compl. ¶¶ 257–59. The Second Circuit has held that:

> To prove a violation of the Eighth Amendment, an inmate must show (1) that the deprivation alleged is objectively sufficiently serious such that the plaintiff was denied the minimal civilized measure of life's necessities, and (2) that the defendant official possessed a sufficiently culpable state of mind associated with the unnecessary and wanton infliction of pain.

*Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (internal quotations omitted) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). The scienter requirement for prison officials in prison conditions cases is "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834. That is, the prison official must be subjectively aware that a serious risk to inmate health or safety exists, *and* deliberately disregard that risk. *Id.* at 837.

Plaintiff's claim fails to make a *prima facie* showing for either prong of the two-part analysis. First, Plaintiff's complaints that his SHU cell is uncomfortable due to poor ventilation, plexiglass, and uncleanliness, are not objectively sufficiently serious enough to be considered inhumane. *See Blyden v. Mancusi*, 186 F.3d 252, 263 (1999) ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim."). Second, even if the conditions of confinement were sufficiently serious, Plaintiff has not shown that Kirkpatrick had a sufficiently culpable state of mind as to the risks created by the SHU cell conditions. Plaintiff has the burden to show that Kirkpatrick was aware of the conditions creating the excessive risk, and that he consciously disregarded the risk. The evidence presented by Plaintiff does not illustrate such subjective recklessness. To the contrary,

Plaintiff states that Kirkpatrick took measures to abate any potential harm from cell cleanliness by allowing SHU inmates to clean their cells three times a week and providing the inmates with the necessary cleaning supplies. Thus, Defendants' motion is granted as to Plaintiff's conditions of confinement claim.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss, or in the alternative, for summary judgment, ECF No. 6, is granted with regard to all of Plaintiff's claims. The Clerk is directed to enter judgment for Defendants.

IT IS SO ORDERED.

Dated:   August 28, 2012
         Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge